IN RE Robert William HALL, Debtor.

Case No. 12–00753

United States Bankruptcy Court,
District of Columbia.

Filed January 3, 2014

---

Richard L. Costella, Miles & Stockbridge P.C., Baltimore, MD, Justin Michael Flint, Eccleston & Wolf, P.C., Washington, DC, Borislav Kushnir, Eccleston & Wolf, P.C., Washington, DC, for Respondents.

Joseph A. Guzinski, U.S. Trustee's Office, Alexandria, VA, for U.S. Trustee.

(Chapter 11)

*MEMORANDUM DECISION RE DEBTOR'S MOTION SEEKING SANCTIONS AND DAMAGES FOR VIOLATION OF THE AUTOMATIC STAY AND FALSE IMPRISONMENT*

S. Martin Teel, Jr., United States Bankruptcy Judge

The debtor has filed a *Motion to Show Cause Why Sanctions Should Not Be Imposed on the Parties Named Below for Violating the Automatic Stay and Damages for False Imprisonment* (Dkt. No. 63). The *Motion* will be denied for the following reasons.

## I

## BACKGROUND

The debtor owns a unit at a condo property in Ocean City, Maryland. Mann Properties manages the condo property. Coral Seas Homeowners' Association ("Coral Seas") is the property's homeowners' association. As previously ruled, part of the *Motion* must be dismissed as seeking damages for prepetition misconduct that, under Fed. R. Bankr.P. 7001, must be pursued via an adversary proceeding complaint. What remains is a claim that Mann Properties and Coral Seas violated the automatic stay of the Bankruptcy Code (11 U.S.C.) contained in 11 U.S.C. § 362(a). That claim must be dismissed for the reasons that follow.

The debtor filed the petition commencing this case on November 15, 2012. Prior to the commencement of the case, Mann Properties and Coral Seas withheld from the debtor the condo's access code to a storage area in which the debtor had stored various property, thereby effectively obtaining possession of that property. The debtor sent an e-mail on November 15, 2012, and then a letter on November 27, 2012, to the attorney for Mann Properties and Coral Seas demanding that they give him the access code. On November 29, 2012, in response to the November 27, 2012 letter, Coral Seas and Mann Properties provided the access code to the debtor. The debtor contends that the delay in providing the access code and the consequent continued retention of possession of his personal property constituted a violation of the automatic stay, presumably meaning, specifically, 11 U.S.C. § 362(a)(3), which bars any act to exercise control over property of the estate.

## II

## THE VARYING VIEWS OF § 362(a)(3)

The courts are divided as to the proper interpretation of § 362(a)(3).

A.

*The D.C. Circuit View*

Controlling precedent in this jurisdiction limits the applicability of 11 U.S.C. § 362(a)(3), and requires the conclusion that Mann Properties and Coral Seas did not violate the automatic stay by failing to provide the debtor with the access code and continuing thereby to retain possession of his personal property upon the commencement of this bankruptcy case. As noted in *United States v. Inslaw, Inc.,* 932 F.2d 1467, 1471 (D.C.Cir.1991):

> Section 362(a) provides that the filing of a bankruptcy petition operates as a stay, applicable to all entities, of—
>
> (3) *any act* to obtain possession of property of the estate or of property from the estate or to *exercise control over property of the estate*....

11 U.S.C. § 362(a) (1988) (italics in original). In *Inslaw,* 932 F.2d at 1474, the court of appeals held that § 362(a)(3) was not violated by an entity's failure, upon the filing of the petition, to cure alleged prepetition misconduct. The court of appeals explained:

> The automatic stay, as its name suggests, serves as a restraint only on *acts to gain possession or control* over property of the estate. *Nowhere in its language is there a hint that it creates an affirmative duty to remedy past acts ... as soon as a debtor files a bankruptcy petition.* The statutory language makes clear that the stay applies only to *acts* taken after the petition is filed.

*Id.* (emphasis added and citations omitted). In arriving at this view of the limited role of the automatic stay, the court of appeals noted:

> The object of the automatic stay provision is essentially to solve a collective action problem—to make sure that creditors do not destroy the bankrupt estate in their scramble for relief.... Since willful violations of the stay expose the offending party to liability for compensatory damages, costs, attorney's fees, and, in some circumstances, punitive damages, ... it is difficult to believe that Congress intended a violation whenever someone already in possession of property mistakenly refuses to capitulate to a bankrupt's assertion of rights in that property.

*Inslaw,* 932 F.2d at 1473 (citation and footnote omitted).

Accordingly, under the reasoning of *Inslaw,* it is only an affirmative act to change control of property of the estate that can give rise to a violation of § 362(a)(3). In short, § 362(a)(3) does not bar continued retention of property seized prepetition. *See In re Bernstein,* 252 B.R. 846 (Bankr.D.D.C.2000); *In re Young,* 193 B.R. 620 (Bankr.D.D.C.1996).[1]

B.

*The Contrary Majority View*

There are decisions constituting a majority view to the contrary, including three at the court of appeals level, *Weber v.*

1. Other courts take a similar view of § 362(a)(3). *See, e.g., Barringer v. Eab Leasing (In re Barringer),* 244 B.R. 402, 407–08 (Bankr.E.D.Mich.1999); *In re U.S. Physicians, Inc.,* 235 B.R. 367, 375 (Bankr.E.D.Pa.1999); *In re Fitch,* 217 B.R. 286, 291 (Bankr.S.D.Cal.1998); *Brown v. Joe Addison, Inc. (In re Brown),* 210 B.R. 878, 884 (Bankr.S.D.Ga.1997); *Spears v. Ford Motor Credit Co. (In re Spears),* 223 B.R. 159 (Bankr.N.D.Ill.1998); *Massey v. Chrysler Fin. Corp. (In re Massey),* 210 B.R. 693, 696 (Bankr.D.Md.1997); *In re Richardson,* 135 B.R. 256 (Bankr.E.D.Tex.1992). *See also TranSouth Fin. Corp. v. Sharon (In re Sharon),* 234 B.R. 676, 688 (B.A.P. 6th Cir.1999) (Stosberg, J., dissenting).

*SEFCU (In re Weber)*, 719 F.3d 72 (2d Cir.2013); *Thompson v. Gen. Motors Acceptance Corp., LLC*, 566 F.3d 699 (7th Cir.2009); and *Knaus v. Concordia Lumber Co., Inc. (In re Knaus)*, 889 F.2d 773 (8th Cir.1989),[2] and others at lower levels.[3] Those decisions largely fail to address the analysis I set forth in *Bernstein*, and they have been persuasively criticized by Professor Ralph Brubaker in a trenchant and cogent two-part analysis:

- *Turnover, Adequate Protection, and the Automatic Stay (Part I): Origins and Evolution of the Turnover Power*, 33 No. 8 Bankruptcy Law Letter NL 1 (August 2013) (hereinafter "Brubaker, *Part I*"); and
- *Turnover, Adequate Protection, and the Automatic Stay (Part II): Who is "Exercising Control" Over What?*, 33 No. 9 Bankruptcy Law Letter NL 1 (September 2013) (hereinafter "Brubaker, *Part II*").

As stated in Brubaker, *Part II* at 1, "[t]he majority position is highly dubious, ... and seems driven more by certain 'practical considerations' (as the courts themselves have put it) than a sound, principled interpretation of the meaning of the relevant Code provisions." I elaborate at length below why the majority view is in error, and why the reasoning of *Inslaw* continues to be sound, and requires the conclusion that there was no violation here of § 362(a)(3).

## III

## THE MAJORITY VIEW RESTS ON THE ERRONEOUS CONCLUSION THAT 11 U.S.C. § 542(a) IS SELF-EXECUTING

The majority view of § 362(a)(3), espoused by *Weber* and its ilk, is premised on an erroneous interpretation of one of the "turnover" provisions of the Bankruptcy Code. Specifically, courts that follow the majority view contend that 11 U.S.C. § 542(a) is "self-executing" and "requires that any entity in possession of property of the estate deliver it to the trustees [sic], without condition or any further action...." *Weber*, 719 F.3d at 79. *Weber* then reasons that, notwithstanding that the debtor is not actually in possession of the property on the petition date, the self-executing nature of § 542(a) operates to vest the debtor with a possessory interest in the property such that a creditor's continued retention of possession constitutes an act to "exercise control" over property of the estate. *Id.*[4] A careful analysis, however, demonstrates that § 542(a) is *not* self-executing.

Section 542(a) was part of the Bankruptcy Code as enacted in 1978, and has remained the same since then. In *United States v. Whiting Pools, Inc.*, 462 U.S. 198, 103 S.Ct. 2309, 76 L.Ed.2d 515 (1983), *aff'g* 674 F.2d 144 (2d Cir.1982), a case relied upon heavily by courts following the majority view, the Court explored the effect of § 542(a) and whether a court could sub-

2. In *Cal. Emp't Dev. Dep't v. Taxel (In re Del Mission Ltd.)*, 98 F.3d 1147, 1149–50 (9th Cir.1996), the court of appeals made loose observations in dicta that are consistent with the majority view, but that are not an actual holding adopting the majority view because the case involved a *postpetition* seizure of property. *See Fitch*, 217 B.R. at 290–91.

3. *See, e.g., Unified People's Fed. Credit Union v. Yates (In re Yates)*, 332 B.R. 1, 4 (B.A.P. 10th Cir.2005); *TranSouth Fin. Corp. v. Sharon (In re Sharon)*, 234 B.R. 676 (B.A.P. 6th Cir.1999).

4. *See also, e.g., Yates*, 332 B.R. at 4, in which the court reasoned that "the interplay between § 362(a) and § 542(a)" required the conclusion that "a creditor's retention of property of the estate after a debtor files for bankruptcy constitutes an 'exercise of control' in violation of the automatic stay."

ject the IRS to a turnover order for property that had been seized prepetition, but not yet sold at a tax auction. It was not until the following year, 1984, that Congress amended § 362(a)(3) to extend the stay to "any act ... to exercise control over property of the estate." [5] Accordingly, to understand why *Whiting Pools* cannot be read to support the view that creditors violate the automatic stay under § 362(a)(3) if they fail immediately, upon the debtor's filing of the petition, to return property that was seized from the debtor prepetition, it is relevant to explore whether § 542(a) was viewed as self-executing prior to the 1984 amendment of § 362(a)(3), the context in which *Whiting Pools* was decided. It was not, and as will be seen, none of the language of § 362(a)(3) suggests that Congress meant by its amendment to change the meaning and operation of § 542(a).

With exceptions of no relevance here, § 542(a) provides that:

> an entity ... in possession, custody, or control, during the case, of property that the trustee may use, sell, or lease under section 363 of this title, or that the debtor may exempt under section 522 of this title, shall deliver to the trustee, and account for, such property or the value of such property, unless such property is of inconsequential value or benefit to the estate.

Sometimes a debtor is vested with a trustee's rights under § 542(a).[6] For simplicity's sake, I will analyze what rights § 542(a) confers on a trustee, but that analysis applies as well to a debtor when a debtor is vested with a trustee's rights under § 542(a).

In contrast to the automatic stay of § 362(a), § 542(a) does not provide that it is to operate as an order (which would carry with it the consequence that it could be enforced by contempt sanctions), and the provision is subject on its face to defenses (with an additional defense against entry of a turnover order, of lack of adequate protection, being contained in 11 U.S.C. § 363(e)). For those reasons, and other reasons explored below, the statute was not viewed as self-executing prior to the 1984 amendment of § 362(a)(3) and continues to be not self-executing.

A.

*Section 542(a) Codified the Pre-Code Practice of Turnover Being Compelled by Entry of a Turnover Order*

As explained in *Inslaw,* 932 F.2d at 1471:

> the Code's "turnover" provisions ... allow the trustee to recover property that "was merely out of the possession of the debtor, yet remained 'property of the debtor.'" House Report at 367; Senate

5. Section 362(a)(3) was amended by § 441 of the Bankruptcy Amendments and Federal Judgeship Act, Pub.L. No. 98–353, 98 Stat. 333 (1984).

6. These are the instances in which a debtor is vested with the trustee's rights under § 542(a):

- In a Chapter 11 case in which no trustee has been appointed, the debtor acts as a debtor in possession pursuant to 11 U.S.C. § 1101(1), and is vested with a trustee's rights under § 542(a) pursuant to 11 U.S.C. § 1107(a).
- In a Chapter 13 case, 11 U.S.C. §§ 1303 and 1304 generally confer on a debtor the rights of a trustee to use, sell, or lease property under 11 U.S.C. § 363, and 11 U.S.C. § 1306(b) provides that the debtor (in contrast to the trustee), with an exception of no relevance here, "shall remain in possession of all property of the estate." These provisions have been viewed as vesting a debtor with a trustee's rights under § 542(a) to obtain possession of property that the trustee "may use, sell, or lease under section 363...."

Report at 82, U.S. Code Cong. & Admin. News 1978, pp. 5868, 6323; see 11 U.S.C. §§ 542, 543 (turnover provisions); *Whiting Pools,* 462 U.S. at 204–09 & n.11, 103 S.Ct. at 2313–16 & n.11.

The purpose of § 542(a), therefore, "is to empower the trustee in bankruptcy to get hold of the property of the debtor, some of which will be in the possession, custody, or control of third parties." *Boyer v. Carlton, Fields, Ward, Emmanuel, Smith & Cutler, P.A. (In re USA Diversified Prods., Inc.),* 100 F.3d 53, 56 (7th Cir. 1996). The statute thus permits an entity in possession of estate property voluntarily to relinquish possession of such property to the trustee in lieu of turning over the property to a debtor who lacks the rights of a trustee.

■ When possession is not relinquished voluntarily, § 542(a) empowers the trustee to obtain an order directing turnover unless one of the defenses to entry of a turnover order applies. But unlike § 362(a), which operates as a statutory injunction, § 542(a) does not operate as a statutory injunction and thus does not enjoy the status of an order as to which contempt sanctions may lie if disobeyed. Instead, § 542(a) codified the pre-Code practice, exemplified by *Reconstruction Fin. Corp. v. Kaplan,* 185 F.2d 791 (1st Cir.1950), under which the court could order turnover by a secured creditor in possession of collateral seized prepetition, but with turnover conditioned on provision of adequate protection. After tracing that pre-Code practice, and the Court's embrace of that practice in *Whiting Pools,* Brubaker, *Part I* at 4–5,[7] persuasively concludes that § 542(a) is *not* self-executing:

> The legislative history of the Code § 542(a) turnover provision has been the subject of careful scholarly study, including by Judge Friendly in his Second Circuit opinion in *Whiting Pools.*[8] Indeed, the Supreme Court commented that "we find Judge Friendly's careful analysis of this history for the Court of Appeals to be unassailable," [9] and Judge Friendly's analysis ultimately concluded that the most "natural reading of § 542 is that it was intended to codify *RFC v. Kaplan,*" [10] which was representative of the pre-Code practice pursuant to which "the bankruptcy court could order the turnover of collateral in the hands of a secured creditor." [11]
>
> Indeed, more generally, Code § 542(a) "gives an explicit statutory basis for the traditional turnover order against persons other than the debtor."[12] As the Supreme Court explained the traditional turnover power in *Maggio v. Zeitz,* it was a use of the bankruptcy

7. The endnotes to this quote have been included below as footnotes, with any changes or additions made by me appearing in brackets.

8. *See Whiting Pools,* 674 F.2d at 152–56. *See also* Plank, 59 Md. L.Rev. at 292–307 [citing to Thomas E. Plank, *The Creditor in Possession Under the Bankruptcy Code: History, Text, and Policy,* 59 Md. L.Rev. 253, 393–407 (2000)]. [Brubaker, *Part I* at 9 n.30.]

9. *Whiting Pools,* 462 U.S. at 207 n. 16, 103 S.Ct. 2309. [Brubaker, *Part I* at 9 n.31.]

10. *Whiting Pools,* 674 F.2d at 155. [Brubaker, *Part I* at 9 n.32.]

11. *Whiting Pools,* 462 U.S. at 208, 103 S.Ct. 2309. "Nothing in the legislative history evinces a congressional intent to depart from that [pre-Code] practice." *Id.* Thus, "the bankruptcy court generally has power under § 542 to order the turnover of property repossessed or executed upon by a secured creditor ... following the debtor's default and prior to his bankruptcy." *Whiting Pools,* 674 F.2d at 156. [Brubaker, *Part I* at 9 n.33.]

12. Plank, 59 Md. L.Rev. at 303 (footnotes omitted). [Brubaker, *Part I* at 9 n.34.]

court's general equitable powers under the statutory predecessor to Code § 105(a) to enforce the debtor's statutory turnover obligation under the predecessor to Code § 521(4) [re-numbered § 521(a)(4) in 2005].[13] With codification of a correlative turnover obligation for third parties in possession of property of the estate in § 542(a), then, bankruptcy courts can use their § 105(a) equitable powers to enter an injunctive turnover order against third parties as "necessary or appropriate to carry out the provisions of" § 542(a).[14]

The most noteworthy implication of this historical perspective on the intended function of § 542(a)—the perspective that the Supreme Court itself promulgated in *Whiting Pools*—is that "§ 542(a) is *not* self-executing."[15] It simply provides an express statutory basis for a bankruptcy court to enter an injunctive order compelling turnover of identified property in the possession of a third party. Consistent with the pre-Code turnover practice that § 542(a) was intended to codify, then, a third party's mere possession of that property, in and of itself (before entry of any turnover order), does not contravene any injunctive orders of the court; only a knowing violation of a duly entered turnover order is contemptuous conduct. Indeed, if § 542(a) were itself a self-executing injunctive order, a subsequent turnover order would be entirely unnecessary. "Injunctions ... are *not* enforced by further injunctions; injunctions are enforced by contempt citations."[16]

B.

*Prior to the Amendment of § 362(a)(3), Courts Viewed § 542(a) as Not Self-Executing*

After the enactment of § 542(a) in 1978, and prior to the amended version of § 362(a)(3) at issue here taking effect in 1984, no court viewed § 542(a) as a mandatory injunction for which contempt might lie. Instead, courts *uniformly* viewed § 542(a) as providing bankruptcy courts with the authority to order the turnover of collateral or other property of the estate, but with the courts authorized to require adequate protection of a secured creditor's interest before directing turnover. *See, e.g., In re Riding,* 44 B.R. 846, 848–49 (Bankr.D.Utah 1984) (decided *after* the Court decided *Whiting Pools*);[17] *Sunrise Equip. & Dev. Corp. v. Pac. Am. Leasing Corp. (In re Sunrise Equip. & Dev. Corp.),* 24 B.R. 26, 27–28 (Bankr.D.Ariz.1982).

Despite this judicial consensus regarding § 542(a), the court in *Thompson,* 566 F.3d at 706, erroneously states that "at a minimum, it appears that bankruptcy courts approved of differing practices concerning adequate protection when *Whiting Pools* was decided," quoting *In re Sharon,* 200 B.R. 181, 190–91 (Bankr.S.D.Ohio 1996). As explained in *Bernstein,* 252

13. *See Maggio v. Zeitz,* 333 U.S.[ 56 at 61–63 (1948)], 68 S.Ct. 401, 92 L.Ed. 476. [Brubaker, *Part I* at 9 n.35.]

14. 11 U.S.C.A. § 105(a). [Brubaker, *Part I* at 9 n.36.]

15. *Bernstein,* 252 B.R. at 849 (emphasis added). [Brubaker, *Part I* at 9 n.37.]

16. Ralph Brubaker, *Of State Sovereign Immunity and Prospective Remedies: The Bankruptcy Discharge as Statutory Ex parte Young Relief,* 76 Am. Bankr.L.J. 461, 555 (2002). [Brubaker, *Part I* at 9 n.38.]

17. *Riding* was decided after § 362(a)(3) was amended, but *Riding* arose in a bankruptcy case commenced before § 362(a)(3) was amended. The amendment to § 362(a)(3) was inapplicable to cases commenced before its effective date, and thus was not applicable in *Riding.*

B.R. at 849 n. 4, the two cases that *Sharon* cited for that proposition did *not* show a different practice. *See also* Brubaker, *Part II* at 3 & nn.9–10. It may be inferred that the parties in *Thompson* neglected to cite *Bernstein* in their briefs in the court of appeals.

### C.

### *Section 542(a) Should be Treated Like its Sister Turnover Provision, § 542(b), as Not Being Self-Executing*

This view of § 542(a) as not self-executing is required as well by another long-standing principle of statutory construction. When sister provisions of a statute contain the same word, that word ought to be given the same meaning.[18] That § 542(a) is not a self-executing mandatory injunction—despite its use of the word "shall"—is demonstrated by considering its sister provision, 11 U.S.C. § 542(b), which is not self-executing despite the use of the word "shall." With exceptions of no relevance here, § 542(b) provides:

> an entity that owes a debt that is property of the estate and that is matured, payable on demand, or payable on order, *shall* pay such debt to, or on the order of, the trustee, except to the extent that such debt may be offset under section 553 of this title against a claim against the debtor.

"Section 542(b) is simply an acknowledgment that the trustee, not the debtor, is entitled to receive payment of monetary obligations owed to the debtor, not a self-executing provision giving rise to contempt when the obligor fails to pay the obligation to the trustee." *Bernstein,* 252 B.R. at 852 (citation omitted). *See also In re Randolph Towers Coop., Inc.,* 458 B.R. 1, 6–7 (Bankr.D.D.C.2011);[19] *Pardo v. Nylcare Health Plans, Inc. (In re APF Co.),* 274 B.R. 408, 417 (Bankr.D.Del.2001) (defendants' "post-petition conduct ... was not an affirmative action within the meaning of § 362(a)(3) or (a)(6). Sections (a)(3) and (a)(6) require more than a mere passive act of failing to remit the Withheld Payments."). Like § 542(b), its sister provision, § 542(a) ought not be viewed as self-executing.

18. *See Gutierrez v. Ada,* 528 U.S. 250, 255, 120 S.Ct. 740, 145 L.Ed.2d 747 (2000) ("words and people are known by their companions"). *See also Maracich v. Spears,* — U.S. —, 133 S.Ct. 2191, 186 L.Ed.2d 275 (2013); *Bullock v. BankChampaign, N.A.,* — U.S. —, 133 S.Ct. 1754, 185 L.Ed.2d 922 (2013). The principle applies in the case of the Bankruptcy Code. *See Rake v. Wade,* 508 U.S. 464, 474, 113 S.Ct. 2187, 124 L.Ed.2d 424 (1993) ("[S]tatutory terms are often 'clarified by the remainder of the statutory scheme—because the same terminology is used elsewhere in a context that makes [its] meaning clear....' ") (quoting *United Sav. Ass'n v. Timbers of Inwood Forest Assocs., Ltd.,* 484 U.S. 365, 371, 108 S.Ct. 626, 630, 98 L.Ed.2d 740 (1988)).

19. *Randolph Towers* set forth numerous reasons why Congress would not have intended § 542(b) to be a self-executing provision enforceable via contempt sanctions. It observed, for example, that:

> Congress could not have intended to make contempt a weapon added to the trustee's arsenal to make it easier to collect accounts payable. It would not have wanted to subject an account obligor to the risk that, if its arguments that the account obligation was not payable are rejected, it might be held in contempt. That would deter the assertion of plausible grounds for non-payment that might be upheld (or at least pass muster under Rule 9011) if asserted. Nor would Congress have wanted a trustee to have a contempt weapon available to only the trustee, giving the trustee a preference over other entities to whom the account obligor is indebted and who do not enjoy contempt as a collection tool.

*Randolph Towers,* 458 B.R. 1, 6–7 (Bankr. D.D.C.2011).

D.

*Viewed in the Context of the Bankruptcy Code as a Whole, Including the Right to Adequate Protection Under § 363(e), § 542(a) is Not Self-Executing*

Even if in isolation the word "shall" in § 542(a) could be read as imposing a mandatory obligation of turnover, a court must "follow the cardinal rule that a statute is to be read as a whole since the meaning of statutory language, plain or not, depends on context." *King v. St. Vincent's Hosp.*, 502 U.S. 215, 221, 112 S.Ct. 570, 116 L.Ed.2d 578 (1991) (citations omitted). It is thus necessary to interpret § 542(a) in light of other provisions of the Bankruptcy Code, and to strive for an interpretation of § 542(a) whose effects are compatible with the Bankruptcy Code as a whole.[20]

Interpreting § 542(a) as an order compelling turnover would be inconsistent with the Bankruptcy Code as a whole. In particular, 11 U.S.C. § 363(e) provides in relevant part:

> *Notwithstanding any other provision of this section*, at any time, on request of an entity that has an interest in property used, sold, or leased, or *proposed* to be used, sold, or leased, by the trustee, the court ... shall *prohibit* or condition such use, sale, or lease as is necessary to provide adequate protection of such interest....

[Emphasis added.][21] The Court observed in *Whiting Pools*, 462 U.S. at 206 n. 12, 103 S.Ct. 2309, that one of the "explicit limitations on § 542(a)" is that "Section 542 provides that the property be usable under § 363...." Property "usable under § 363" necessarily includes the limitation of § 363(e) that, "[n]otwithstanding any other provision of this section," any proposed use is subject to the trustee's obligation to comply with any order issued by the court for adequate protection.[22] As observed in Brubaker, *Part II* at 5:

> Of course, the most prominent among the "explicit limitations on the reach of § 542(a)" that the Supreme Court specifically highlighted in *Whiting Pools* is

20. "In determining the meaning of the statute, we look not only to the particular statutory language, but to the design of the statute as a whole and to its object and policy." *Crandon v. United States*, 494 U.S. 152, 158, 110 S.Ct. 997, 108 L.Ed.2d 132 (1990). *See also Samantar v. Yousuf*, 560 U.S. 305, 319, 130 S.Ct. 2278, 2289, 176 L.Ed.2d 1047 (2010) ("We do not ... construe statutory phrases in isolation; we read statutes as a whole." (quoting *United States v. Morton*, 467 U.S. 822, 828, 104 S.Ct. 2769, 81 L.Ed.2d 680 (1984))); *Timbers of Inwood Forest Assocs., Ltd.*, 484 U.S. at 371, 108 S.Ct. 626 ("Statutory construction ... is a holistic endeavor."); *Grogan v. Garner*, 498 U.S. 279, 287 n. 13, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991).

21. It is significant that in *Weber*, 719 F.3d at 81 n. 8, the court of appeals only partially quoted § 363(e), stating that it provides, "[i]n relevant part" that:

> Notwithstanding any other provision of this section, at any time, on request of an entity that has an interest in property used, sold, or leased ... by the trustee, the court, with or without a hearing, shall prohibit or condition such use, sale or lease as is necessary to provide adequate protection of such interest.

This quotation omits the critical words regarding property "*proposed* to be used, sold, or leased" by the trustee. [Emphasis added.] When property has been seized prepetition and not voluntarily delivered to the trustee, the trustee can only be in the posture of *proposing* to use, sell, or lease the property.

22. *See* Charles J. Tabb, *The Law of Bankruptcy*, § 3.6, at 263 (2d ed. 2009):

> Section 542(a) says only that an entity must turn over "property that the trustee may use ... under section 363," and under § 363, in turn, the trustee may only use property in which a party has a lien on the condition that the trustee afford the lienholder "adequate protection" of its lien interest. § 363(e).

"that the property be usable under § 363."[23] By express incorporation of § 363, then, when the estate seeks turnover of property "*proposed* to be used, sold, or leased, by the trustee, the *court ... shall prohibit or condition* such use, sale, or lease as is necessary to *provide adequate protection*" of the secured creditor's lien rights.[24]

If a creditor is required to turn over the asset before it can seek adequate protection, it might be irreparably harmed and lose the protection that § 363(e) is intended to provide. *See Bernstein,* 252 B.R. at 850–51. Yet § 542(a), if treated as a mandatory injunction, would compel immediate turnover, and would result in the creditor being in contempt if it delayed making turnover while it pursued a request for adequate protection. The Court in *Whiting Pools,* 462 U.S. at 211–12, 103 S.Ct. 2309, expressly held that despite the applicability of § 542(a) to a secured creditor, that creditor "under section 363(e), remains entitled to adequate protection for its interests...." The Court reasoned that "the right to adequate protection ... replace[s] the protection afforded by possession," *Whiting Pools,* 462 U.S. at 207, 103 S.Ct. 2309, and ruled that "[a]t the creditor's insistence, the bankruptcy court must place such limits or conditions on the trustee's power to sell, use, or lease property as are necessary to protect the creditor." *Id.* at 204, 103 S.Ct. 2309. The right to adequate protection cannot be destroyed by treating § 542(a) as self-executing and as compelling turnover before the creditor can obtain an order providing such adequate protection:

> As observed in *Citizens Bank of Maryland v. Strumpf,* 516 U.S. 16, 20, 116 S.Ct. 286, 133 L.Ed.2d 258 (1995) (citation omitted): "[i]t is an elementary rule of construction that 'the act cannot be held to destroy itself.'" The right of adequate protection cannot be rendered meaningless by an interpretation of §§ 362(a)(3) and 542(a) that would compel turnover even before an opportunity for the court's granting adequate protection. Those provisions no more operate to destroy the right to insist on adequate protection as a condition to turnover than did § 362(a)(3) destroy the right of setoff in *Strumpf,* 516 U.S. at 21, 116 S.Ct. 286.

*Bernstein,* 252 B.R. at 851.

Here are some examples of a right to adequate protection that could be destroyed if immediate turnover were required:

- As a form of adequate protection, a lienholder has a right to have the debtor comply with its obligation to insure the collateral. If immediate turnover were required, an accident might result in the collateral being destroyed, with no insurance proceeds recovered, and the lien being rendered worthless.
- Similarly, if prepetition wages are the subject of a prepetition garnishment lien, requiring release of the garnishment lien would destroy the garnishment lien. *See In re Giles,* 271 B.R. 903, 906–07 (Bankr. M.D.Fla.2002). *See also Miller v. Montgomery Kolodny Amatuzio Dusbabek (In re Miller),* 2011 WL 6217342, at *3 (Bankr.D.Colo. Dec. 14, 2011) (holding that "the better view" is that creditor may refuse to release garnished funds to protect lien rights without violating automatic stay).
- Another example is a lien that is perfected by possession, a lien that

23. Citing *Whiting Pools,* 462 U.S. at 206 & n. 12, 103 S.Ct. 2309.

24. Quoting 11 U.S.C. § 363(e) (italics and underscoring added).

would be destroyed upon possession being relinquished.[25]

Even in the Eighth Circuit, despite the court of appeals decision in *Knaus,* the Bankruptcy Appellate Panel has held that a secured creditor whose "relinquishment of possession will in and of itself destroy the creditor's rights" is entitled to refuse to deliver possession, despite § 542(a), until it is given adequate protection. *N. Am. Banking Co. v. Leonard (In re WEB2B Payment Solutions, Inc.),* 488 B.R. 387, 393 (B.A.P. 8th Cir.2013). As Professor Brubaker observes:

> Carving out an exception for a secured creditor whose "relinquishment of possession will in and of itself destroy the creditor's rights," however, cannot (by any stretch of the imagination) be wrung from the language of § 362(a)(3). If " 'exercising control' over the object in which the estate's equitable [ownership] interest lay" [citing *Weber,* 719 F.3d at 79]—i.e., retaining possession—violates § 362(a)(3), that is the case whether or not the secured creditor's "relinquishment of possession will in and of itself destroy the creditor's rights." As the *Sharon* majority acknowledged, "[t]here is *no* 'exception' to § 362(a)(3) that excuses ... refusal to deliver possession." [Citing *Sharon,* 234 B.R. at 683 (emphasis added by Professor Brubaker).]

Brubaker, *Part II* at 7.

Accordingly, § 542(a) is not self-executing in light of a creditor's right to raise its right to adequate protection as a defense. Any frivolous or bad faith assertion of the defense of lack of adequate protection can be addressed via Rule 9011 of the Federal Rules of Bankruptcy Procedure.[26]

E.

*Weber's Reliance on Collier on Bankruptcy is Misplaced*

The *Weber* court asserted that § 542(a) is "self-executing" and "requires that any entity in possession of property of the estate deliver it to the trustees, *without condition....*" 719 F.3d at 79 (emphasis added). As authority for this view, *Weber* cites and quotes *Collier on Bankruptcy* § 542.02 (16th ed. 2012). That reliance on *Collier on Bankruptcy* is unpersuasive.

Before *Whiting Pools* was decided in 1983 and § 362(a)(3) was amended in 1984, 4 *Collier on Bankruptcy* § 542.02, at 542–6 (15th ed. 1980), stated (as quoted in *Alpa Corp. v. IRS (In re Alpa Corp.),* 11 B.R. 281, 290 n. 6 (Bankr.D.Utah 1981)) that "[t]he better view is ... that adequate protection is a condition precedent to turnover if demanded by the creditor," consistent with the view that § 542(a) is not self-executing. After *Whiting Pools* was decided and at least as late as December 2003, and possibly as late as June 2009, *Collier on Bankruptcy* continued to take that view:

> The Supreme Court's holding in *Whiting Pools* confirms that a creditor in possession of collateral that the trustee may use, sell, or lease under section 363 must

25. Some decisions hold that, depending on state law, the exception of § 362(b)(3) to the automatic stay sometimes applies to a continued retention of collateral subject to a lien perfected by possession. *See, e.g., Hayden v. Wells (In re Hayden),* 308 B.R. 428 (B.A.P. 9th Cir.2004). However, absent a turnover order, a continued retention of such property does not violate § 362(a)(3) in the first place, thus mooting any necessity of the creditor's engaging in an analysis of state law to show that § 362(b)(3) applies to except it from § 362(a)(3).

26. *See In re Dillard,* 2001 WL 1700026, at *3 (Bankr.M.D.N.C. Apr. 17, 2001) ("While the creditor is entitled to retain possession until adequate protection has been provided, the creditor must act in good faith and risks the imposition of sanctions by frivolously opposing turnover of property of the estate that was repossessed pre-petition.").

turn over the collateral to the trustee after commencement of the case, but may demand adequate protection as a condition precedent to turnover. [Footnote omitted.] This is consistent with the requirement of section 363(e) that *at any time* on request of a creditor, the court shall prohibit or condition the use, sale, or lease of property as is necessary to adequately protect the creditor's interest in the property.

5 *Collier on Bankruptcy* ¶ 542.02[2], at 542–11 to 542–12 (Alan N. Resnick & Henry J. Sommer eds., 15th ed. rev. 2009).[27] In the footnote to the concluding sentence of this passage, it was noted:

a similar construction was placed on Section 257 of the Bankruptcy Act which entitled the trustee in a Chapter X case to "immediate possession" of all property in possession of a trustee under a deed of trust or a mortgagee under a mortgage. Although the language of the statutes mandating immediate possession was absolute, courts construed the language to balance the harm to the second [ sic: meant to say "secured"] creditor against the benefit to the debtor's reorganization. *See, e.g., In re Riker Delaware Corp.,* 385 F.2d 124 (3d Cir.1967).

*Id.* at 542–12 n.31: It is only sometime after 2003 that *Collier on Bankruptcy* took the view that § 542(a) is self-executing, 5 *Collier on Bankruptcy,* ¶ 542.02 at 542–7 to 542–8 (Alan N. Resnick & Henry J. Sommer eds., 16th ed. 2013), and then only acknowledging in two footnotes that a contrary view exists. *Id.* at 542–7 n. 9 & 542–8 n.11. *Collier on Bankruptcy* does not explain how § 542(a) could now be viewed as self-executing despite its prior observations regarding the right to insist on adequate protection under § 363(e) as a condition to turnover, and regarding the pre-Code practice.

F.

*On its Face, § 542(a) Does Not Require Turnover "Without Condition" and Thus is Not Self-Executing*

How *Weber* could view § 542(a) as requiring turnover "without condition" is inexplicable. On the face of § 542(a) alone, the statute does not require delivery to the trustee *without condition.* Section 542(a) itself provides defenses to turnover:

- The statute does not compel turnover when the property is "of inconsequential value or benefit to the estate."
- Another defense is that the property is neither property "that the trustee may use, sell, or lease under section 363 of this title" nor property "that the debtor may exempt under section 522 of this title." This would be the case when the entity possessing the property disputes the debtor's ownership of the property. As *Inslaw,* notes, 932 F.2d at 1472, "[i]t is settled law that the debtor cannot use the turnover provisions to liquidate contract disputes or otherwise demand assets whose title is in dispute." (Citations omitted.)
- In addition, a turnover claim is an equitable claim, *Burtch v. Ganz (In re Mushroom Transp. Co.),* 382 F.3d 325, 337 (3d Cir.2004), and based on equitable defenses, the court may

27. *Collier on Bankruptcy* is a loose-leaf publication updated periodically by dated releases. The quoted text is found in this court's chambers copy of the 15th ed. rev. 2009, and the pages quoted from bear a release date of December 2003 (Rel. 88–12/03). The last update of that chambers copy was in June 2009 and unless there is a missing release in that chambers copy, *Collier on Bankruptcy* was still taking the quoted position as late as June 2009.

deny turnover. *See In re Kabler*, 230 B.R. 525, 526 (Bankr.E.D.N.C. 1999) (balancing equities in declining to order turnover).

If a party raises any of these defenses and the court rejects the defense, the party ought not be held in contempt for having done so. As already noted, frivolous or bad faith assertion of a defense to entry of a turnover order can be addressed under Federal Rule of Bankruptcy Procedure 9011.

Illustratively, with respect to the defense that the property is not property of the estate, *Inslaw*, 932 F.2d at 1473 (citation and footnote omitted) stated:

> [I]t is difficult to believe that Congress intended a violation whenever someone already in possession of property mistakenly refuses to capitulate to a bankrupt's assertion of rights in that property.

Only upon entry of a turnover order adjudicating the estate's ownership of the property could there be a contempt for failing to turn over the property.[28]

The danger, under a view that § 542(a) is self-executing, is that an entity with a valid defense of being the owner of the property might capitulate to the trustee's demand for turnover instead of incurring the expense of a contempt proceeding and the risk that the court might mistakenly reject its defense of ownership, and hold it to have been in contempt.[29] Congress would not likely have intended that result.

If, upon rejecting a defense of ownership, or any other defense to turnover, the court were to hold the entity that asserted that defense to have been in contempt, the risk would be that entities that have a valid or non-frivolous defense to turnover under § 542(a) would be deterred by the threat of contempt from raising the defense. This would be the equivalent of throwing out the baby (defenses that pass muster under Rule 9011) with the dirty bath water (defenses that do not pass muster under Rule 9011).

Because § 542(a) is on its face subject to explicit defenses, § 542(a) is not a self-executing statutory provision that, without condition, compels turnover of estate property possessed by a creditor.

### G.

### *All of the Foregoing Demonstrates That § 542(a) is Not Self-Executing*

In conclusion, as observed in Brubaker, *Part II* at 4:

> The *Weber* court, therefore, was simply incorrect in its assertion that § 542(a) is "self-executing" and "requires that any entity in possession of property of the estate deliver it to the trustees, *without condition*."[30] As the historical evolution of the turnover power clearly reveals,

**28.** Under the contrary majority view, however, the contempt proceeding would go forward, even though an issue of ownership remained to be decided, and even though the entity in possession of the property had always been willing to make turnover to the trustee if the bankruptcy court determined that the property is property of the estate. *See, e.g., SMB Grp., Inc. v. Diamond (In re SMB Grp., Inc.)*, No. CC–11–1610, 2012 WL 5419275, at *10 (B.A.P. 9th Cir. Nov. 7, 2012) (Bankruptcy Appellate Panel allowed a contempt proceeding to proceed against Diamond for failing to turn over property even though Diamond made clear that he would comply with a turnover order resolving the issue of ownership of the property). A contempt proceeding injects additional issues, and additional expense, beyond what is entailed in a proceeding merely to determine ownership.

**29.** Similarly, an entity in possession of property as to which both the trustee and a third party claimed ownership might be cowed by the threat of contempt into releasing the property to the trustee.

**30.** Citing *Weber*, 719 F.3d at 79 (emphasis added).

"§ 542(a) is not self-executing." [31] And given that truism, it seems highly unlikely that Congress would indirectly impose a self-effectuating turnover obligation via § 362(a)(3) that exceeds the scope of the § 542(a) turnover provision. Indeed, it is only by means of a post-hoc boot-strap, under the influence of the overly broad interpretation of § 362(a)(3), that the courts have misconstrued § 542(a) as somehow being self-executing when (on its face) it clearly cannot be, and its origins further confirm that conclusion.

I turn next to § 362(a)(3) itself.

## IV

## SECTION 362(a)(3) DOES NOT ALTER THE NON-SELF-EXECUTING NATURE OF § 542(a) AND DOES NOT COMPEL IMMEDIATE TURNOVER OF PROPERTY SEIZED PREPETITION

The majority view holds that mere retention of pre-existing possession is an act to "exercise control" over property of the estate in violation of § 362(a)(3). This view cannot withstand close scrutiny.

### A.

### *The Majority View Disregards Established Practice*

Prior to the ambiguous "exercise control" language being added to § 362(a)(3) in 1984, § 542(a) was plainly not self-executing, and the well-established practice was that turnover could be refused and the creditor could raise defenses to turnover before being required to relinquish possession. The Court "will not read the Bankruptcy Code to erode past bankruptcy practice absent a clear indication that Congress intended such a departure." *Cohen v. de la Cruz,* 523 U.S. 213, 221, 118 S.Ct. 1212, 140 L.Ed.2d 341 (1998) (citation omitted). Nothing in § 362(a)(3) purports to amend § 542(a). Moreover, there is no evidence of a congressional intent to undo the well-established practice that a secured creditor could raise defenses before being required to make turnover. The majority view, treating mere retention of possession as being prohibited, runs counter to the presumption against such a major departure from established practice. *See Dewsnup v. Timm,* 502 U.S. 410, 419, 112 S.Ct. 773, 116 L.Ed.2d 903 (1992); Brubaker, *Part II* at 2–3.

### B.

### *§ 362(a)(3) Contemplates a Postpetition Act*

Section 362(a)(3) stays "any *act* to obtain possession of property of the estate ... or *to exercise control* over property of the estate." This language does not require relinquishment of possession obtained prepetition. First, "[t]he automatic stay, as its name suggests, serves as a restraint only on acts to gain possession or control over property of the estate." *Inslaw,* 932 F.2d at 1474.[32]

31. Citing Charles J. Tabb, *The Law of Bankruptcy,* § 3.6, at 263 (2d ed. 2009).

32. A similar view was expressed in 3 Collier on Bankruptcy ¶ 362.03[5], at 362–20, 21 (Lawrence P. King ed., 15th ed. 1997) (footnotes omitted) (as quoted in *In re Stinson,* 221 B.R. 726, 730 (Bankr.E.D.Mich.1998) (emphasis added by me)):

> Section 362(a)(3) *stays all actions,* whether judicial or private, *that seek* ... to exercise control over property of the estate.... The stay applies to *attempts to obtain control* over both tangible and intangible property.

*Collier on Bankruptcy* now takes a different view, *see* 3 Collier on Bankruptcy ¶ 362.03[5], at 362–29 (Alan N. Resnick & Henry J. Sommer eds. 16th ed. 2013), relying on *Thompson, Del Mission,* and *Knaus,* but it is noteworthy that, as discussed earlier in this decision, at one point *Collier* seems to have held a view similar to that expressed in *Inslaw.*

Second, the "act ... to exercise control" language itself suggests that an affirmative act of exercising control is required. *See Beker Indus. Corp. v. Fla. Land and Water Adjudicatory Comm'n (In re Beker Indus. Corp.),* 57 B.R. 611, 626 (Bankr. S.D.N.Y.1986) (emphasis added):

> [T]he legislative history to § 362(a)(3), when enacted as part of the Bankruptcy Reform Act of 1978, P.L. 95–598, reveals that this branch of the automatic stay "applies to prevent dismemberment of the estate and to assure its orderly distribution." *Securities and Exch. Comm. v. First Fin. Group of Tex.,* 645 F.2d 429, 439 (5th Cir.1981); *cf. In re Lawson Burich Associates,* 31 B.R. at 609–10. Since **an act designed to change control of property** could be tantamount to obtaining possession and have the same effect, it appears that § 362(a)(3) was merely tightened to obtain full protection....

Unlike 11 U.S.C. § 521(a)(6), requiring that a debtor in certain circumstances "shall ... not retain possession of [certain] personal property" unless the debtor takes certain actions, § 362(a)(3) does not provide that a creditor shall not retain possession of collateral seized prepetition. *See Young,* 193 B.R. at 624–25.

Third, § 362(a)(3) addresses the issue of possession by barring acts "to obtain possession," thus suggesting that the "exercise control" language in § 362(a)(3) "prohibits only affirmative conduct directed at 'control' rather than 'possession' of estate property." Brubaker, *Part II* at 3–4. As noted in Brubaker, *Part II* at 3:

> use of the word "control" in the 1984 amendment to § 362(a)(3) suggests that the drafters meant to distinguish the newly prohibited "control" from the already-prohibited acts to obtain "possession," in order to reach nonpossessory conduct that would nonetheless interfere with the estate's authority over a particular property interest. Indeed, the legislative history explaining the originally enacted version of § 362(a)(3) also suggested such a distinction, although the original statutory language clearly did not address nonpossessory "control." [33]

Examples of why the "exercise control" language was necessary for reasons other than forcing turnover in derogation of a secured creditor's rights under §§ 542(a) and 363(e) abound. *See* Brubaker, *Part II* at 3–4 & 10 nn.15–16. *See also* 1 David G. Epstein, *et al., Bankruptcy* § 3–14, at 163 (1992):

> A common example is exercising control of intangible property rights that belong to the estate, such as contract rights or causes of action. These rights are incapable of real possession unless they are reified. Yet, (a)(3) preserves and guards against interference with them by staying any act to exercise control over estate property.

Accordingly, the language of § 362(a)(3) itself demonstrates that it ought not be interpreted as requiring relinquishment of possession obtained prepetition.

### C.

### *The Majority View Violates Other Principles of Statutory Interpretation*

Even if § 362(a)(3) is sufficiently ambiguous that, standing alone, it could be interpreted as requiring relinquishment of

33. In the accompanying endnote, Brubaker notes that:

> In explaining the clause prohibiting any "act to obtain possession ... of property from the estate," both the House and Senate Reports described this provision as designed to protect "property over which the estate has control *or* possession." S.Rep. No. 95–989, at 50 (1978) (emphasis added); H.R.Rep. No. 95–595, at 341 (1977) (emphasis added).

Brubaker, *Part II* at 10 n.12.

possession obtained prepetition, other principles of statutory interpretation require that it not be given that interpretation.

First, as explained in part III(D), above, "[i]t is an elementary rule of construction that 'the act cannot be held to destroy itself,' " *Strumpf,* 516 U.S. at 20, 116 S.Ct. 286 (citation omitted), and the amendment of § 362(a)(3) ought not be viewed as destroying the secured creditor's rights under §§ 542(a) and 363(e), as upheld in *Whiting Pools,* 462 U.S. at 211–12, 103 S.Ct. 2309, to raise defenses to turnover, including the right to seek adequate protection that would be lost if relinquishment of possession were compelled by § 362(a)(3) without the necessity of a turnover order.

Moreover, "interpretations of a statute which would produce absurd results are to be avoided if alternative interpretations consistent with the legislative purpose are available." *Griffin v. Oceanic Contractors, Inc.,* 458 U.S. 564, 575, 102 S.Ct. 3245, 73 L.Ed.2d 973 (1982). This would be the case even if § 362(a)(3) had a seemingly plain meaning (which it does *not*) supporting the majority view. *See id.* at 571, 102 S.Ct. 3245 (plain meaning will be rejected in "rare cases [in which] the literal application of a statute will produce a result demonstrably at odds with the intentions of its drafters...."). If the majority view of § 362(a)(3) were to prevail, it would lead to the absurd result that when turnover is not required under § 542(a) (for example, when the creditor is able to establish the defense under § 542(a) that the property is of inconsequential value or benefit to the estate or that its lien is not adequately protected), nevertheless the failure to have delivered the property to the trustee would constitute a stay violation. *See* Brubaker, *Part II* at 4.

This is well illustrated by *Expeditors Int'l of Wash., Inc. v. Colortran, Inc. (In re Colortran, Inc.),* 210 B.R. 823 (B.A.P. 9th Cir.1997), *aff'd in part and vacated in part on other grounds,* 165 F.3d 35 (9th Cir.1998). There, the creditor, Expeditors, was held to have violated § 362(a)(3) by refusing to turn over property unless its debt was paid even though the possessory lien it held would have been destroyed had it released the property. *Colortran,* 210 B.R. at 827.[34] The panel in *Colortran* was led down this erroneous path because of its misreading of *Del Mission* (which was a *postpetition* seizure case) as holding that § 542(a) is self-executing and requires a creditor who obtained possession of the debtor's property *prepetition* to release the property to the trustee without a turnover order.[35]

34. In the stay violation litigation, the validity of the lien, and Expeditors' good faith in asserting that it had a lien, were treated as irrelevant. *Colortran,* 210 B.R. at 827. Expeditors was eventually held in a later decision to have had a valid lien. *See Expeditors Int'l of Wash., Inc. v. Citicorp N. Am., Inc. (In re Colortran, Inc.),* 218 B.R. 507, 513 (B.A.P. 9th Cir.1997) ("the lien Expeditors asserts is valid").

35. The court of appeals' decision in *Colortran,* a puzzling unpublished decision that the court of appeals required not be cited as precedent in the Ninth Circuit, was de facto a victory for the creditor. Although the court of appeals, without explanation, stated that it was affirming the holding that the creditor had violated § 362(a)(3), that amounted to unnecessary dicta because the court held that there was no statutory basis for awarding sanctions. It held 11 U.S.C. § 362(h) (re-numbered § 362(k) in 2005) inapplicable to the debtor as a corporation and, without explanation, it vacated the Bankruptcy Appellate Panel's remand of the proceeding to the bankruptcy court to consider contempt sanctions under 11 U.S.C. § 105(a). Accordingly, the creditor had no reason to seek reconsideration in the court of appeals. On remand, the bankruptcy court docket reflects that the bankruptcy court refunded the creditor's appeal bond, and awarded no damages.

D.

*Retaining Possession of Property Seized Prepetition is Not an Exercise of Control Over a Possessory Interest Held by the Estate*

When a creditor holds property it seized prepetition, the debtor does not possess the property. Accordingly, the creditor's continued retention of possession is not an exercise of control over any existing possession by the debtor of the property.

Stated another way, interests in property that the debtor holds on the petition date do not include possession of property held, instead, by a creditor. Accordingly, possession is not an interest in property that becomes property of the estate under 11 U.S.C. § 541(a)(1) upon the commencement of the case. If a trustee succeeds in obtaining turnover under § 542(a), then possession becomes an interest that *is* property of the estate by reason of 11 U.S.C. § 541(a)(7) (property of the estate includes "[a]ny interest in property that the estate acquires after the commencement of the case."). Before then, possession is *not* an interest of the debtor in property constituting property of the estate. Accordingly, a creditor's continued retention of possession is not an exercise of control over a right of possession that is property of the estate.

Section 542(a) is not itself a property interest, but instead a codification of pre-Code practice authorizing voluntary turnover to the trustee and empowering a trustee to pursue a turnover proceeding in which the creditor may raise any available defenses if unwilling voluntarily to surrender possession. A refusal to acquiesce in the trustee's view that she is entitled to turnover under § 542(a) is thus not an act to exercise control over property of the estate. *See Inslaw,* 932 F.2d at 1473 (mistaken refusal to capitulate to a turnover demand is not a violation of § 362(a)(3)).

It is in that context that one must read the Court's observation in *Whiting Pools* that:

> In effect, § 542(a) grants to the estate a possessory interest in certain property of the debtor that was not held by the debtor at the commencement of reorganization proceedings. The Bankruptcy Code provides secured creditors various rights, including the right to adequate protection, and these rights replace the protection afforded by possession.

462 U.S. at 207, 103 S.Ct. 2309 (footnote omitted). In the accompanying footnote ( 462 U.S. at 207 n. 15, 103 S.Ct. 2309), the Court viewed § 542(a) as "consistent with other provisions of the Bankruptcy Code that address the scope of the estate," citing §§ 544, 545, and 549. When a trustee avoids a transfer of property pursuant to one of those provisions, that results in the property becoming property of the estate, by reason of 11 U.S.C. § 541(a)(3) [36] and (7), only once the trustee prevails in avoiding the transfer of property at issue. *See, e.g., In re Colonial Realty Co.,* 980 F.2d 125, 131 (2d Cir.1992), and other decisions cited in Brubaker, *Part II* at 6 & 10 n.30. Accordingly, the Court's statement that § 542(a) effectively grants the estate a possessory interest must be read in the context of the entire decision in *Whiting Pools* as meaning that it grants a right of possession to the trustee subject to the procedural protections that the creditor enjoys, including the creditor's right to raise defenses explicitly mentioned in

**36.** Section 541(a)(3) includes as property of the estate "[a]ny interest in property that the trustee recovers under section 329(b), 363(n), 543, 550, 553, or 723 of this title." Section 550, in turn, is the provision permitting recovery of a transfer avoided under § 544, § 545, or § 549. Such recoveries are also made property of the estate by the more general language of § 541(a)(7).

§ 542(a) itself and the right to seek adequate protection under § 363(e).

*Weber* reasons that "*Whiting Pools* teaches that the filing of a petition will generally transform a debtor's equitable [ownership] interest into a bankruptcy estate's possessory right...." *Weber,* 719 F.3d at 79. That possessory right, however, is the procedural right under § 542(a) to obtain a turnover order abrogating the creditor's possession held on the petition date. Until such a turnover order is entered, the estate lacks actual possession, and possession only becomes property of the estate under § 541(a)(7) upon the trustee actually obtaining possession.

> In *Whiting Pools,* the Court stated that § 541(a)(1) is intended to include in the estate any property made available to the estate by other provisions of the Bankruptcy Code. See H.R.Rep. No. 95–595, p. 367 (1977). Several of these provisions bring into the estate property in which the debtor did not have a possessory interest at the time the bankruptcy proceedings commenced.
>
> Section 542(a) is such a provision.

462 U.S. at 205, 103 S.Ct. 2309. In the accompanying footnote, n.10, the Court mentioned §§ 543, 547, and 548 as examples of such provisions. As observed in Brubaker, *Part II* at 5–6, the dictum quoted above, and the implication that § 542(a) vests the estate with possession as of the commencement of the case, are false: § 541(a)(1) is limited to "all legal or equitable interests of the *debtor* [not of the trustee] in property *as of the commencement of the case.*" (Emphasis added.) Instead, §§ 541(a)(3) and 541(a)(7) are the provisions that include in the estate a possessory interest in property recovered pursuant to §§ 542, 543, 547, and 548, and they do not purport to make possession of the recovered property an interest of the estate in property until there is an actual recovery. The Court itself noted that § 541(a)(1) would render § 542(a) "largely superfluous" unless the latter statute conferred on the estate rights which the debtor did not hold as of the commencement of the case. *Whiting Pools,* 462 U.S. at 207 n. 15, 103 S.Ct. 2309.

The Court's erroneous dictum as to what § 541(a)(1) is intended to include in the estate can be explained by the legislative history it cites, which stated that the scope of paragraph (1) of subsection (a) of § 541:

> is broad. It includes all kinds of property ... currently specified in section 70a of the Bankruptcy Act ..., [as well as] property recovered by the trustee under section 542 ... if the property recovered was merely out of the possession of the debtor, yet remained "property of the debtor."

*Whiting Pools,* 462 U.S. at 205 nn.9 & 11, 103 S.Ct. 2309 (quoting H.R.Rep. No. 95–595, p. 367 (1977), *reprinted in* 1978 U.S.C.C.A.N. 5868, 6323). That legislative history, however, related to a version of the proposed Bankruptcy Code prior to the addition of § 541(a)(7). As observed in the floor statements relating to the revised proposed § 541(a):

> Section 541(a)(7) is new. The provision clarifies that any interest in property that the estate acquires after the commencement of the case is property of the estate[.]

*See* 124 Cong. Rec. H11096 (daily ed. Sept. 28, 1978) (statements of Rep. Edwards); 124 Cong. Rec. S17413 (daily ed. Oct. 6, 1978) (statements of Sen. DeConcini). It is § 541(a)(7), not § 541(a)(1), that hauls into the estate property recovered under § 542(a).[37] The trustee's recovery of pos-

37. As observed in *Barringer,* 244 B.R. at 407 n. 3, the Court's observation in *Whiting Pools* quoted above would have been accurate if it had been limited to § 541(a) as a whole, so that it read "§ 541(a) is intended to include in

session of property under § 542(a) results in that possession being property of the estate pursuant to § 541(a)(7) only once possession is "recovered" and not when, at the outset of the case, it is merely "recoverable" under § 542(a). Section 542(a) does *not* vest the estate with actual possession as of the petition date.

Accordingly, even if a passive act of continuing to retain possession could be viewed as an act to exercise control, it is not an exercise of control over a present possessory interest that is property of the estate, and thus does not violate the automatic stay. *See Barringer,* 244 B.R. at 406–07. *See also Fitch,* 217 B.R. at 290 ("as of the date the petition was filed, the Debtor retained title to the car, but the right to possess the car remained with Autoflow and did not become property of the estate").[38]

As stated in Brubaker, *Part II* at 6:

> Thus, it may well be true that "[w]ithholding possession of property from a bankruptcy estate is the essence of 'exercising control' *over possession,*" [quoting *Thompson,* 566 F.3d at 703 (quoting *Sharon,* 234 B.R. at 682) (emphasis added) ] as the majority courts repeatedly (and tellingly) emphasize. But such an exercise of control over possession is a violation of the § 362(a)(3) automatic stay only if possession is property of the estate. When a secured creditor is in possession on the petition date, though, possession is not property of the estate, and possession only becomes property of the estate once the estate actually obtains possession via turnover.

Moreover, treating continued retention of possession as a forbidden exercise of control over property of the estate is completely at odds with the proper view of § 542(a) as not being a self-executing provision requiring turnover without awaiting adjudication of whether any of the limits on turnover are applicable.

### E.

### *The Reliance of Some Decisions on 11 U.S.C. § 362(f) as Justifying the Majority View is Misplaced*

Some decisions reason that a creditor who faces the prospect of irreparable injury to its lien if it makes turnover without conditions need not worry if § 542(a) is treated as self-executing, with a failure to deliver the property to the trustee punishable as an exercise of control over property of the estate prohibited by § 362(a)(3), because the creditor can seek an emergency hearing for relief from the automatic stay under 11 U.S.C. § 362(f).[39] Before

the estate any property made available by other provisions of the Bankruptcy Code."

38. Even when the creditor has obtained possession *unlawfully,* the debtor's rights under nonbankruptcy law are to seek replevin or to exercise any right of self-help that exists under nonbankruptcy law. Those rights become property of the estate. The creditor's continued retention of the property postpetition does not constitute an exercise of control over those rights: the trustee is free to pursue those rights and the creditor's continued retention does not interfere with those rights. A creditor's continued retention of possession based on a mistaken view that it is lawfully in possession, and its exercise of its right to defend that it is lawfully in possession, ought not be viewed as having been an exercise of control over property of the estate once the court rejects its asserted defense. *See Bernstein,* 252 B.R. at 852–53.

39. *See Thompson,* 566 F.3d at 707:

> [T]he Bankruptcy Code already has a procedure in place to combat such a problem-the emergency motion. Fed. R. Bankr.P. 4001(a)(2); *see also In re Colortran,* 210 at 827–28 ("If the creditor is concerned that its interest will be irreparably harmed if the property is turned over before the motion for relief from stay can be heard it may request an emergency hearing under § 362(f).").

*See also Stephens v. Guaranteed Auto, Inc. (In re Stephens),* 495 B.R. 608, 613 (Bankr. N.D.Ga.2013) (creditor could require the debtor to provide proof of insurance as a

the Court decided *Strumpf,* lower courts, including the court of appeals that was reversed by *Strumpf,* that viewed § 362(a)(7) as imposing an obligation on a creditor to turn over funds subject to a right of setoff similarly viewed § 362(f) as a remedy available to creditors to avoid the loss of a right of setoff if they first delivered to the trustee the amounts owed as a debt. *See Citizens Bank of Maryland v. Strumpf (In re Strumpf),* 37 F.3d 155, 157–58 (4th Cir.1994) ("If the creditor fears that the property subject to the motion will suffer irreparable damage before notice and hearing may be had, the creditor may even file an ex parte motion under § 362(f)."). In the Supreme Court, the respondent, the debtor Strumpf, argued:

> Although *Citizens* asserts that any filing of a request for relief from the § 362 stay would necessarily have alerted the Debtor to Citizens' intentions (and presumably would have triggered a withdrawal of funds from the account by the Debtor), Congress contemplated such a "banker's dilemma" when it enacted 11 U.S.C. § 362(f) of the Bankruptcy Code permitting the granting of ex parte relief from the stay as required to prevent irreparable damage to creditors such as Citizens.

Resp't Br. at 19. The respondent, *id.* at 19–20, then quoted this observation from *B.F. Goodrich Emps. Fed. Credit Union v. Patterson (In re Patterson),* 967 F.2d 505, 511 (11th Cir.1992):

> Creditors in this position have an alternative remedy and need not freeze debtors' accounts. The creditor may file an ex parte motion pursuant to Sections 362(f) or 363(e) and accompany this motion with the funds from the debtor's account to be paid into the registry of the bankruptcy court. This approach strikes the proper balance between the parties' interests. The creditor is protected from the risk that funds will be insufficient or unavailable to satisfy a later-determined valid right of setoff. The debtor is protected from the risk that a creditor will unilaterally deny the debtor access to funds in which the creditor does not have a valid right of setoff.

The absurdity of that approach was demonstrated by the *Patterson* court's acknowledgment that the bank had only a 24–hour window within which to seek ex parte § 362(f) relief, otherwise it would violate the automatic stay if it refused to honor a check drawn on the account:

> When a check is presented, however, the institution must make the determination whether to honor the check before midnight of the next banking day after it receives the check. See Ala.Code § 7–4–104(1)(h) (1975) (the "midnight deadline rule"). The midnight deadline rule provides the institution a small window in which to make its ex parte motion to the bankruptcy court. Nevertheless, this window is an alternative to the freeze, does not violate the automatic stay, and is readily available to banks in this predicament.

*Patterson,* 967 F.2d at 511. The Court in *Strumpf* obviously did not view requiring banks to turn on a dime and seek § 362(f) relief in a 24–hour window as an adequate basis for upholding a view of the automatic stay that would otherwise destroy the right of setoff. The Court in *Strumpf* rejected the court of appeals' view of §§ 362(a)(3) and 362(a)(7), stating "by forcing the creditor to pay *its* debt immediately, it would divest the creditor of the very thing that supports the right of setoff." 516 U.S. at 20, 116 S.Ct. 286.

condition to returning the car only if the creditor "moves immediately in the bankruptcy court for an order requiring adequate protection"); *Yates,* 332 B.R. at 7–8; *In re Jackson,* 251 B.R. 597, 600 (Bankr.D.Utah 2000); *Sharon,* 234 B.R. at 685–86.

Assume, here, that the majority view is correct that the creditor has an obligation under § 362(a)(3) to deliver to the trustee property seized prepetition, even though immediate delivery will result in a loss of adequate protection. Unlike *Patterson*, there is no rule of law that allows the creditor *any* window of opportunity, not even a 24–hour window, to withhold possession while it pursues § 362(f) relief without being in violation of the automatic stay. This further strengthens the case for rejecting § 362(f) as a basis for following the majority view that § 542(a) is self-executing, and that continued retention of possession violates § 362(a)(3).

Section 362(f) was already part of the Bankruptcy Code as it was enacted in 1978, with immaterial differences from today's version.[40] It is only when the creditor is in need of adequate protection that it would have any reason to seek § 362(f) relief. So long as the creditor possesses the property, the creditor needs no such relief: its continued possession of the property provides it adequate protection. It is only when the debtor files a request with the bankruptcy court to obtain turnover to use, sell, or lease the property—a proposal contemplated by § 363(e) as one of the occasions upon which the creditor may request adequate protection—that the creditor has a need to request adequate protection of its lien. As we have seen, prior to the enactment of § 362(a)(3), no court viewed § 542(a) as self-executing and as not allowing the creditor to refuse to make turnover before it could request the court to condition any proposed turnover on the provision of adequate protection of its lien interest under § 363(e). So long as the creditor had possession of the property, § 362(f) was not a necessary tool.

Section 362(b) lists most of the exceptions to § 362(a), and neither it nor any other Bankruptcy Code provision lists the pendency of a § 362(f) motion as an exception to § 362(a)(3). Moreover, § 362(f) itself does not purport to provide an exception to § 362(a)(3). Pending disposition of a § 362(f) motion, there necessarily will be a period of time during which (under the majority view) the creditor is in contempt for failing to turn over property seized prepetition. Accordingly, when courts that follow the majority rule say that reasonably prompt resort to § 362(f) will result in no violation of § 362(a)(3) having occurred, that amounts to judicial legislation making § 362(f) an exception to the automatic stay when it is not. Such impermissible judicial legislation is an attempt to justify treating the creditor's right to adequate protection of its interest under § 363(e) as not a reason to view § 542(a) as *not* self-executing.[41]

**40.** Section 362(f) as enacted in 1978 provided:

> The court, without a hearing, shall grant such relief from the stay provided under subsection (a) of this section as is necessary to prevent irreparable damage to the interest of an entity in property, if such interest will suffer such damage before there is an opportunity for notice and a hearing under subsection (d) or (e) of this section.

**41.** Even if such judicial legislation were permissible, it leaves it solely to the discretion of the bankruptcy court to decide whether the creditor has moved reasonably promptly to seek § 362(f) relief. A creditor who has a right to request adequate protection of its lien interest cannot be expected to turn on a dime. Most creditors would need to seek the assistance of counsel to file a § 362(f) motion. Yet a creditor who delays for even 15 days while it seeks assistance of counsel and while that counsel explores the creditor's rights under the Bankruptcy Code could be held not to have acted reasonably. *See Mitchell v. BankIllinois*, 316 B.R. 891, 900–01 (S.D.Tex.2004) (creditor violated the stay by waiting 15 days after the debtor demanded the return of her vehicle to file a motion for relief from the automatic stay). Had Congress intended by § 362(a)(3) to make § 542(a) self-executing but to allow resort to § 362(f) as a way of avoiding a violation of that self-executing obligation of turnover, surely it would have set a deadline within which the creditor was re-

Because a creditor who has possession of collateral has no need to seek adequate protection on an emergency basis, it is not surprising that § 362(f) places no time limit on when a creditor who has seized property prepetition may seek adequate protection of its lien. Instead, § 363(e) answers when the creditor must seek adequate protection of its interest, namely, when the trustee files a motion for turnover in order to engage in a proposed use, sale, or lease of the property. Section 363(e) contemplates that, "notwithstanding any other provision" of § 363 the creditor "at any time" may request adequate protection of "property proposed to be used." In turn, § 542(a) contemplates that the property must be property that the trustee may use under § 363, and, necessarily, notwithstanding any other provision of § 363, a creditor is entitled to request at any time adequate protection of property the trustee proposes to use.

## V

## IT IS UNNECESSARY TO DECIDE WHETHER MANN PROPERTIES AND CORAL SEAS VIOLATED 11 U.S.C. § 362(a)(6)

For all of the foregoing reasons, I conclude that there was no violation of § 362(a)(3). The record, however, additionally raises an issue of whether Mann Properties and Coral Seas violated 11 U.S.C. § 362(a)(6), which prohibits any "act to collect, assess, or recover a claim against the debtor that arose before the commencement of the case under this title." It remains unclear whether the act of Mann Properties and Coral Seas in failing immediately to release the access code to the debtor after he made a *postpetition* request for release to him of the access code arose from a belief that Mann Properties and Coral Seas had lien rights against the debtor's stored property. When a creditor has a lien on the debtor's property in its possession, its refusal to release the property (and thereby to injure or destroy its lien rights) unless the debt is satisfied is not a violation of § 362(a)(6) but instead a recognition that under nonbankruptcy law the lien remains intact unless the debt it secures is fully paid. Even when the creditor only believes but does not actually have a lien on the property (or an ownership interest in the property), turnover is not required absent a turnover order for reasons discussed earlier in this decision with respect to § 362(a)(3).

Even if Mann Properties and Coral Seas had no belief that they held a valid lien against the debtor's stored property, the record is unclear whether a 14-day delay in releasing the access code to the debtor was a typical delay encountered by even a member of the condo association who is current on her dues. Accordingly, the record is unclear whether the failure immediately to release the access code was a conscious step taken by Mann Properties and Coral Seas, without believing that they had a lien right in the debtor's stored property, to coerce collection of unpaid prepetition condo dues that they have asserted are owed in this case. If that were the case, that may have constituted a violation of § 362(a)(6). *See In re Kuehn,* 563 F.3d 289, 294 (7th Cir.2009).

However, I need not wrestle with the issue of whether there was a violation of § 362(a)(6) for two reasons. First, the debtor's motion makes no mention of unpaid condo dues, and did not allege that the withholding of the access code was an act to collect unpaid condo dues. His motion, therefore, did not state a violation of § 362(a)(6).

quired to seek § 362(f) relief (similar to setting deadlines as to other matters in, *e.g.,* 11 U.S.C. §§ 362(e)(1), 362(*l*)(1), 521(a)(6), and 521(i)) but it did not.

Second, in his letter of November 27, 2012, the debtor stated:

> If the code pertaining to the storage area is not forth coming within the next 5 business days I will file a motion to show cause as to why you and your client should be sanctioned for this apparent purposeful violation.

I view the debtor as having conceded at a hearing of December 17, 2013, that this amounted to an implicit offer not to file a motion for sanctions if the access code was submitted within five business days. He conceded at the hearing that Mann Properties and Coral Seas provided the access code to the debtor on November 29, 2012 (two days after the letter of November 27, 2012). Finally, I view him as having conceded at the hearing that he had therefore waived suing for a violation of the automatic stay.[42]

## VI

### CONCLUSION

For all of these reasons, the debtor's *Motion to Show Cause Why Sanctions Should Not Be Imposed on the Parties Named Below for Violating the Automatic Stay and Damages for False Imprisonment* (Dkt. No. 63) will be denied. An order follows.

---

**42.** The waiver applies as well to the pursuit of sanctions for violation of § 362(a)(3).