In re Carl BERNSTEIN, Debtor.

No. 00–01372.

United States Bankruptcy Court,
District of Columbia.

Sept. 20, 2000.

Joel Steinberg, Joel Steinberg & Associates, P.L.C., Alexandria, VA, for Debtor.

Martin Mooradian, Springfield, VA, for Creditor.

*AMENDED DECISION AND ORDER RE MOTION FOR EXPEDITED HEARING OF MOTION FOR CONTEMPT FOR VIOLATION OF AUTOMATIC STAY*

S. MARTIN TEEL, Jr., Bankruptcy Judge.

The court declines to hear the Motion for Contempt for Violation of the Automatic Stay (Docket Entry No. 5) on an emergency basis. The contempt motion is directed to continued retention of property pursuant to a prepetition writ of fieri facias, conduct which the debtor asserts vio-

lates 11 U.S.C. § 362(a)(3).[1]  Because the continued retention of the property pursuant to a prepetition seizure does not violate § 362(a)(3), the court will deny the motion for an expedited hearing.[2]

█  The alleged staleness of the creditor's writ of fieri facias under local law may be a basis for contesting any lien that would otherwise have been achieved by the writ of fieri facias.  But the invalidity of the creditor's asserted fieri facias lien does not require treating a failure to turn over estate assets seized pursuant to the writ as a violation of 11 U.S.C. § 362(a)(3).

## I

█  As this court explained in *In re Young*, 193 B.R. 620, 624–25 (Bankr. D.D.C.1996), § 362(a)(3) is ambiguous: the prohibited act of exercising control can (and, for various reasons, should) be read as meaning an affirmative act by the creditor instead of the passive act of simply continuing to possess the property.  As observed in *Beker Indus. Corp. v. Florida Land and Water Adjudicatory Comm'n (In re Beker Industries Corp.)*, 57 B.R. 611, 626 (Bankr.S.D.N.Y.1986) (emphasis added):

> the legislative history to § 362(a)(3), when enacted as part of the Bankruptcy Reform Act of 1978, P.L. 95–598, reveals that this branch of the automatic stay "applies to prevent dismemberment of

the estate and to assure its orderly distribution."  *Securities and Exch. Comm. v. First Fin. Group of Tex.*, 645 F.2d 429, 439 (5th Cir.1981); *cf. In re Lawson Burich Associates*, 31 B.R. at 609–10.  Since **an act designed to change control of property** could be tantamount to obtaining possession and have the same effect, it appears that § 362(a)(3) was merely tightened to obtain full protection. . . .

In other words, "[t]he automatic stay, as its name suggests, serves as a restraint only on acts to gain possession or control over property of the estate."  *United States v. Inslaw*, 932 F.2d 1467, 1474 (D.C.Cir.1991), *cert. denied*, 502 U.S. 1048, 112 S.Ct. 913, 116 L.Ed.2d 813 (1992).  An example of an affirmative act which does constitute exercising control over property of the estate is a creditor who files a covenant not to encumber or convey real property belonging to the estate.  *Rothenberg v. Ralph D. Kaiser Co. (In re Rothenberg)*, 173 B.R. 4, 14 (Bankr.D.D.C.1994) ("even if the Covenant is invalid and/or does not constitute a lien, RDK's actions were an attempt to exercise control over property of the estate").[3]  The creditor here has taken no such affirmative step.

█  Even if the creditor has no lawful right of possession (because the seizure on its behalf was not in compliance with nonbankruptcy law), the failure to turn over the property is not an affirmative act alter-

---

**1.**  The contempt motion is also directed to a writ of garnishment pursued by the same creditor, but the debtor does not assert that this ground of the contempt motion warrants setting the contempt motion for hearing on an emergency basis.

**2.**  The motion devotes considerable attention to two irrelevant matters which merely serve to clutter the motion:
    1.  The wrongful seizure pursuant to the writ of fieri facias—in an attempt to collect the debtor's debt—of assets not belonging to the debtor is irrelevant to whether the automatic stay has been violated.

2.  Similarly, that any possessory lien acquired by the creditor with respect to property of the debtor seized under the writ of fieri facias would be avoidable as a preference adds nothing to the automatic stay analysis: until any such lien is avoided as a preference, it remains a lien.

**3.**  Section 362(a)(3) (mis-cited in *Rothenberg* as § 362(a)(2)) was actually inapplicable in *Rothenberg* because the debtor's earlier bankruptcy case was filed before the enactment of § 362(a)(3), but the court and the parties overlooked this.

ing the status quo such as to run afoul of the spirit of the automatic stay. The automatic stay ought not vary in meaning depending on whether the prepetition seizure was allegedly unlawful.

## II

■■■ The inapplicability of § 362(a)(3) to the passive act of maintaining the status quo through continued retention of property seized prepetition is not altered by 11 U.S.C. § 542(a). Decided by a divided bankruptcy appellate panel, *In re Sharon*, 234 B.R. 676 (6th Cir. BAP 1999), held that § 542(a) changes the status quo because § 542(a) commands, with exceptions of no relevance here, that:

> an entity ... in possession, custody, or control, during the case, of property that the trustee may use, sell, or lease under section 363 of this title, or that the debtor may exempt under section 522 of this title, shall deliver to the trustee, and account for, such property or the value of such property, unless such property is of inconsequential value or benefit to the estate.

This court rejects the reasoning of the majority in *Sharon* because, as explained at length in *In re Barringer*, 244 B.R. 402 (Bankr.E.D.Mich.1999), § 542(a) is not self-executing.

The court agrees with *Barringer* that the *Sharon* majority read too much into the Supreme Court's decision in *United States v. Whiting Pools, Inc.*, 462 U.S.

198, 103 S.Ct. 2309, 76 L.Ed.2d 515 (1983). The Court made only two holdings in *Whiting Pools:* first, that the estate, as defined under § 541(a)(1) generally includes property of the debtor seized by a creditor prepetition (part I of the decision) and, second, that prepetition seizure of tangible property seized by tax levy does not effect a change in title or otherwise provide an exception to the general rule (part III of the decision). The bankruptcy court order at issue in *Whiting Pools* **ordered turnover conditioned on the provision of adequate protection.** Accordingly, the passages from *Whiting Pools* quoted in *Sharon* did not address the question *Sharon* addressed: whether § 542(a) is self-executing, requiring turnover before the creditor can obtain adequate protection as a condition to turnover. The Court simply held that the Internal Revenue Service was required to look to the Bankruptcy Code (including 11 U.S.C. § 363(e)'s provision for adequate protection) instead of withholding the seized property on the basis of the Service's rejected argument that its tax levy effected a change in title removing the property from the debtor's reorganization efforts. The Court did not undo long settled practice requiring a turnover order when a creditor insists upon adequate protection of its interest in property it seized prepetition. *Young*, 193 B.R. at 622 n. 3 and 626.[4]

To elaborate on *Barringer*, there are several reasons why § 542(a) must be held to be not self-executing.

---

4. The bankruptcy court whose judgment was affirmed in *Sharon* unconvincingly states that bankruptcy courts approved of differing practices concerning adequate protection when *Whiting Pools* was decided. *In re Sharon*, 200 B.R. 181, 190 (Bankr.S.D.Ohio 1996), citing and quoting *In re Purbeck & Assoc., Ltd.*, 12 B.R. 406, 410 (Bankr.D.Conn.1981). But the quote from *Purbeck* is incomplete, deleting the *Purbeck* court's observation that "[t]he defendant failed to perfect any security interest he had in the jeep" which was the basis for ruling that "as a consequence, the plaintiff is

entitled to an order requiring the defendant to immediately deliver the jeep to the plaintiff without the necessity of the plaintiff providing the defendant with adequate protection." Similarly, the bankruptcy court in *Sharon*, 200 B.R. at 190, cites *In re Endres*, 12 B.R. 404 (Bankr.E.D.Wis.1981), as further support for its position that prior to *Whiting Pools* the courts ordered turnover before according adequate protection. Bur *Endres* involved a **postpetition** seizure of an automobile and hence is distinguishable. *Endres* is wholly consistent with the reasoning in *Young*.

■ First, Section 542(a) envisions that the creditor will be entitled to raise any defenses to turnover before it is compelled to do so. Section 542(a) contains two exceptions in itself:

- property that is "of inconsequential value or benefit to the estate," and

- property that is neither property "that the trustee may use, sell, or lease under section 363 of this title"[5] nor property "that the debtor may exempt under section 522 of this title."[6]

If an entity possessing property raises one of these defenses, there is no indication in the Bankruptcy Code that the entity does so at the risk of being held in contempt under § 362(a)(3) in the event that the defense is rejected.

Second, § 363(e) provides that:

at any time, on request of an entity that has an interest in property used, sold, or leased, or proposed to be used, sold, or leased, by the trustee, the court, with or without a hearing, shall prohibit or condition such use, sale, or lease as is necessary to provide adequate protection of such interest.

If the creditor contests the trustee's right of turnover, for whatever reason, the Code plainly contemplates that the court will adjudicate all defenses the creditor raises to turnover, including any defense that the creditor asserts a lien and requests that the court accord adequate protection of that lien under 11 U.S.C. § 363(e). Where the creditor's lien might be destroyed if its collateral were released to the trustee without some provision for adequate protection, it stands to reason that the creditor ought to be able to defend against turnover on the basis of lack of adequate protection before being required to turn over the collateral.

Moreover, 11 U.S.C. § 507(b) recognizes that even once some provision for adequate protection is made, that protection may prove to have been inadequate, leading to an administrative claim against the estate. Section 507(b) accords superpriority status to such a claim. If § 542(a) requires turnover without the necessity of a turnover order, this would mean that there would be no necessity for the trustee to provide adequate protection. In turn, this would render § 507(b) unavailable to protect a creditor who turns over property, without any provision of adequate protection because of a court's interpretation of § 542(a) as self-executing.

■ Surely Congress did not intend § 542(a) to be interpreted in a fashion that would eviscerate the statutory protections of §§ 363(e) and 507(b). As observed in *United Sav. Ass'n of Texas v. Timbers of Inwood Forest Assocs., Ltd.*, 484 U.S. 365, 371, 108 S.Ct. 626, 98 L.Ed.2d 740 (1988):

Statutory construction ... is a holistic endeavor. A provision that may seem ambiguous in isolation is often clarified by the remainder of the statutory scheme—because the same terminology is used elsewhere in a context that makes its meaning clear, or because only one of the permissible meanings produces a substantive effect that is compatible with the rest of the law.

Numerous instances exist in which a creditor will need adequate protection of its lien prior to being required to turn over the collateral, lest the lien be destroyed or diminished in value during the interval between turnover and adjudication of the

---

**5.** This would be the case, for example, when the trustee is not operating a business of the debtor and no order has been entered to permit such use, sale, or lease.

**6.** This would be the case, for example, when the debtor is a corporation not entitled to invoke any exemptions under § 522, or when the debtor has already exempted other property to the exclusion of being able to exempt the property at issue.

right to adequate protection. The obvious examples are a creditor in the possession of pledged collateral where turnover would destroy the pledge or a creditor whose collateral is uninsured. It would be incompatible with Congress's obvious intent for such a creditor to be required to turn over its collateral without awaiting a hearing which would indeed lead to an adjudication that the creditor has a right to such adequate protection.

As observed in *Citizens Bank of Maryland v. Strumpf,* 516 U.S. 16, 20, 116 S.Ct. 286, 133 L.Ed.2d 258 (1995) (citation omitted): "[i]t is an elementary rule of construction that 'the act cannot be held to destroy itself.'" The right of adequate protection cannot be rendered meaningless by an interpretation of §§ 362(a)(3) and 542(a) that would compel turnover even before an opportunity for the court's granting adequate protection. Those provisions no more operate to destroy the right to insist on adequate protection as a condition to turnover than did § 362(a)(3) destroy the right of setoff in *Strumpf,* 516 U.S. at 21, 116 S.Ct. 286.

This (and other reasons that might justify declining to order turnover) explain the observation in the floor statements to the enactment of § 542(a) that:

> This section is not intended to require an entity to deliver property to the trustee if such entity has obtained an order of the court authorizing the entity to retain possession, custody, or control of the property.

124 Cong. Rec. H11096–97 (daily ed. Sept. 28, 1978); S17413 (daily ed. Oct. 6, 1978) (remarks of Rep. Edwards and Sen. De-Concini). It is no answer that the creditor can seek such an order on its own instead of in a turnover proceeding: if § 542(a) is self-executing, such an order would come only after a period during which the creditor is in contempt.

Third, there will be instances in which § 542(a) would be plainly inapplicable, but in which it would make no sense for Congress to have intended § 362(a)(3) to have a lesser reach. For example, in this chapter 7 case, as is usually the case, no order has been entered under which "the business of the debtor is authorized to be operated under section 721." Such an order is a prerequisite under § 363(c)(1) to a chapter 7 trustee's being authorized, pursuant to that provision, to use, sell, or lease the property "in the ordinary course of business, without notice or a hearing." Accordingly, the trustee would be authorized to use, sell, or lease the property only after notice and a hearing. § 363(b)(1). There has been no notice and a hearing, as that term is construed in 11 U.S.C. § 102(1), so the trustee could not assert that § 542(a) is applicable on the basis that the property is property that the trustee can use under § 363. The alternative ground for making § 542(a) applicable—that the property is property that the debtor may exempt—might not exist as well. If the debtor had already exhausted his exemptions by claiming property already in the trustee's possession as being exempt, or if the debtor were a corporation not entitled to assert any exemptions under § 522, the property would not be property that the debtor may exempt. In those circumstances, the creditor would have an absolute defense at this juncture to turnover under § 542(a): the provision would simply not yet be applicable. So § 542(a) could not be invoked to make § 362(a)(3) applicable to the creditor's continued retention of the property in those circumstances.

It would be odd for the reach of § 362(a)(3) to turn on whether the trustee is authorized to use, lease, or sell estate property under § 363(c)(1) without the necessity of a court order. A chapter 7 liquidating trustee's administration of an estate can be as severely hampered as a chapter 11 trustee's administration of a reorganization case when a valuable asset

is withheld by a creditor holding possession pursuant to a prepetition seizure. Surely the reach of § 362(a)(3) ought not turn on the happenstance of whether the trustee has been authorized to operate the debtor's business, such as to trigger entitlement to use the property under § 363(c)(1) without notice and a hearing,[7] and the happenstance of whether the debtor may exempt the property. Avoiding that anomaly is an additional reason for interpreting § 362(a)(3) in **all** cases[8] as not prohibiting the continued retention of property seized prepetition until resolution of the parties' respective rights in a turnover proceeding.

▉▉▉ Fourth, § 542(a) ought to be construed in light of the parallel provision of 11 U.S.C. § 542(b) to avoid giving unintended breadth to § 542(a). *See Williams v. Taylor*, 529 U.S. 420, 120 S.Ct. 1479, 1490, 146 L.Ed.2d 435 (2000); *Gutierrez v. Ada*, 528 U.S. 250, 120 S.Ct. 740, 744, 145 L.Ed.2d 747 (2000) ("[W]ords and people are known by their companions."); *United States v. Locke*, 529 U.S. 89, 120 S.Ct. 1135, 1146, 146 L.Ed.2d 69 (2000). Section 542(b) provides:

> (b) Except as provided in subsection (c) or (d) of this section, an entity that owes a debt that is property of the estate and that is matured, payable on demand, or payable on order, shall pay such debt to, or on the order of, the trustee, except to the extent that such debt may be offset under section 553 of this title against a claim against the debtor.

Section 542(b) is simply an acknowledgment that the trustee, not the debtor, is entitled to receive payment of monetary obligations owed to the debtor, not a self-executing provision giving rise to contempt when the obligor fails to pay the obligation to the trustee. *See Inslaw*, 932 F.2d at 1472 (§ 362(a)(3) does not apply "[w]henever a party against whom the bankrupt holds a cause of action (or other intangible property right) acted in accord with his view of the dispute rather than that of the debtor-in-possession or bankruptcy trustee"); *In re Williams*, 249 B.R. 222 (Bankr. D.D.C.2000); *In re Mountaineer Coal Co., Inc.*, 247 B.R. 633, 644 (Bankr.W.D.Va. 2000). Both § 542(a) and § 542(b) should be viewed as vesting a right in the trustee, but not a right that is self-executing. Under both provisions, when the entity obligated to perform fails to perform, the trustee's remedy is to obtain a court order, not contempt. The purpose of § 542(a), therefore, "is to empower the trustee in bankruptcy to get hold of the property of the debtor, some of which will be in the possession, custody, or control of third parties." *Boyer v. Carlton, Fields, Ward, Emmanuel, Smith & Cutler, P.A. (In re USA Diversified Products, Inc.)*, 100 F.3d 53, 56 (7th Cir.1996) (Posner, J.).

### III

▉▉▉ Although *Barringer* limited its holding to a creditor **lawfully** in possession of the property on the petition date, § 542(a) is no more self-executing in the case of **unlawful** possession. When the prepetition seizure is ultimately deter-

---

7. Remember that § 363(c)(1) is directed to property already in the possession of the trustee, as well as property the trustee recovers from other entities. Section 363(c)(1) merely contemplates that once the trustee has possession of the property, the trustee is entitled to use the property. So § 363(c)(1) does not answer whether a creditor must relinquish possession without an opportunity for a hearing. Whether a hearing is required to obtain possession ought not turn on whether the property, once possessed by the trustee, is authorized to be used in the ordinary course of the debtor's business.

8. This includes chapter 11 cases where the debtor in possession is authorized to operate its business under 11 U.S.C. § 1108 and hence is authorized by § 363(c)(1) to use property in the ordinary course of the debtor's business without the necessity of a court order.

mined to have been unlawful, § 542(a) does not with perfect hindsight require that the creditor have turned over the property without a court order on learning of the petition.

Few lien disputes are susceptible of ready determination. They are ordinarily decided only after the filing of an adversary proceeding as required by F.R. Bankr.P. 7001. A turnover proceeding or similar adversary proceeding, not a contempt proceeding, is the proper vehicle for adjudicating questions of disputed ownership and, analogously, the validity of an asserted lien. *See In re Rubin*, 378 F.2d 104, 109 (3d Cir.1967) ("summary and plenary proceedings, not contempt proceedings, are the proper vehicles for determining ownership or possession of or title to property"). The court doubts that Congress intended that a creditor can retain possession of property only at the risk that it will be held in contempt if its asserted lien is ruled invalid.

In any event, § 542(a) is completely silent regarding lawful prepetition seizures versus unlawful prepetition seizures. There is simply no way to read the provision as being self-executing in the one case, but not in the other. Moreover, as demonstrated above, there are circumstances in which § 542(a) is simply inapplicable until the trustee has obtained an order permitting the trustee to use the property. As in the case of lawful seizures, there should not be a different result depending on the happenstance of whether such circumstances exist.

## IV

■ Finally, if § 542(a) is not self-executing, does § 362(a)(3) by itself compel a finding of contempt if the creditor knows that its possession of the property was acquired unlawfully?

First, lest § 362(a)(3) be given an interpretation that would apply to even instances of property lawfully seized prepetition, the answer must be no. Section 362(a)(3) commands that a creditor not exercise control over property of the estate. A debtor's car is property of the estate even if the car was seized lawfully prepetition by the creditor. Property is property regardless of who possesses it. So if failure to release property in the case of possession acquired unlawfully prepetition is an exercise of control over the property, then so is a failure to release the property when the possession was acquired lawfully.

■ Second, it does not suffice to assert that the debtor's nonbankruptcy right of possession (because the creditor's possession is unlawful) is property of the estate such that the continued retention of the property is an exercise of control over the debtor's right of possession. When the creditor simply passively retains possession, the debtor's nonbankruptcy rights remain precisely what they were before the filing of the petition: the debtor retains the right to sue the creditor to force turnover. Generally, nonbankruptcy law accords no right of self-help in effectuating a debtor's right of possession when a creditor has seized possession unlawfully. (If there were a right of self-help, then the creditor's interference with that right arguably would be an exercise of control over property of the estate.) So nonbankruptcy law defines the debtor's right of possession as meaning that the debtor has the right to sue to recover possession.

Third, it would be odd to convert § 362(a)(3) into a self-executing turnover provision with respect to property seized unlawfully prepetition, when the Bankruptcy Code already has a specific provision addressing turnover questions when an entity possesses property of the estate. There is nothing to suggest that Congress intended § 362(a)(3) to displace § 542(a) as the operative provision with respect to questions of turnover when the creditor's

possession is alleged to have been obtained unlawfully.

■ Fourth, it makes no difference that it might have made sense for Congress to choose to enhance the debtor's nonbankruptcy rights by making continued retention of property a violation of the automatic stay when the creditor has no possible good faith basis for asserting that its possession is lawful. Section 542(a) affords a statutory remedy, centralized in the bankruptcy court, of obtaining a turnover order, but as demonstrated above, § 542(a) does not convert continued retention into a violation of § 362(a)(3). In enacting § 362(a)(3), Congress was content to preserve the nonbankruptcy status quo until a turnover proceeding could be brought under § 542(a), that is, to preserve the debtor's rights as they existed on the petition date until the § 542(a) proceeding could be decided. There is no evidence that Congress intended by § 362(a)(3) to enhance a debtor's ability under nonbankruptcy law to redress an unlawful seizure by making continued retention of unlawfully seized property a contempt prior to a court ordering turnover. As observed in *Butner v. United States*, 440 U.S. 48, 55, 99 S.Ct. 914, 59 L.Ed.2d 136 (1979) (citation omitted):

> Property interests are created and defined by state law. Unless some federal interest requires a different result, there is no reason why such interests should be analyzed differently simply because an interested party is involved in a bankruptcy proceeding. Uniform treatment of property interests by both state and federal courts within a State serves to reduce uncertainty, to discourage forum shopping, and to prevent a party from receiving "a windfall merely by reason of the happenstance of bankruptcy." The justifications for application of state law are not limited to ownership interests; they apply with equal force to security interests . . . .

\* \* \* \* \* \*

In accordance with the foregoing, it is

ORDERED that the motion for an expedited hearing on the debtor's motion for contempt is denied and that the clerk shall schedule the debtor's contempt motion for hearing in due course.