NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 14-1287
_____

In Re: RAFAIL THEOKARY,
                              Debtor

RAFAIL THEOKARY, Appellant

v.

TOM SHAY; ERIC ABBATIELLO; SHOWPLACE FARMS; GAITWAY FARMS,
INC.; JOHN DOES (1-10) entities or legal entities that become known after filing
_____

Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. Civ. No. 2-10-cv-00058)
District Judge: Luis F. Restrepo
_____

Submitted Under Third Circuit L.A.R. 34.1(a)
December 11, 2014
_____

Before: VANASKIE, GREENBERG, and COWEN, *Circuit Judges*.

(Opinion Filed: February 5, 2015)
_____

OPINION*
_____

VANASKIE, *Circuit Judge*.

---

* This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does
not constitute binding precedent.

Rafail Theokary appeals the dismissal of an adversary action he commenced in the course of his Chapter 7 bankruptcy proceedings. The adversary action was dismissed as a sanction for Theokary's submission of a fraudulent expert report on damages. Theokary contends that the Bankruptcy Court exceeded its authority by dismissing the adversary action in its entirety, rather than just limiting his damage award. We find that the Bankruptcy Court acted well within its inherent authority and did not abuse its discretion in dismissing the adversary action. Accordingly, we will affirm.

I.

Prior to the bankruptcy proceeding in which the underlying adversary action was brought, Theokary leased three horses from a farm that is not a party to this action. He then hired Appellees Tom Shay and Eric Abbatiello to care for the leased horses. Theokary also boarded two of the horses with Appellee Showplace Farms ("Showplace"), while the other horse was stabled at Appellee Gaitway Farms, Inc. ("Gaitway"). Theokary did not pay any of the Appellees for any of their services. In turn, they each individually filed suit in the Superior Court of New Jersey during April and May of 2006, seeking payment for the care and boarding of the horses. On May 23, 2006, Theokary filed a Chapter 13 bankruptcy case with the Bankruptcy Court for the District of New Jersey. This filing resulted in the Appellees dismissing their respective state court actions without prejudice. However, on October 5, 2006 the New Jersey Bankruptcy court dismissed Theokary's Chapter 13 bankruptcy for "bad faith filing." *In re Theokary*, 444 B.R. 306, 313 (Bankr. E.D. Pa.).

2

On February 16, 2007, Theokary filed a Chapter 7 bankruptcy case in the Bankruptcy Court for the Eastern District of Pennsylvania. The filing of that case resulted in the horses being incorporated into the bankruptcy estate that same day pursuant to 11 U.S.C. § 541(a)(1). Despite receiving notice of the bankruptcy petition, Shay and Abbatiello, exercising stablemen's liens, sold the horses two days later, on February 18, 2007.

Claiming the sale violated the automatic stay imposed by operation of law when he filed his Chapter 7 petition, see 11 U.S.C. § 362(a)(3), Theokary filed an adversary action against the Appellees on February 20, 2009. Trial of the adversary action was bifurcated, with the liability phase of the trial commencing in November of 2009. In a memorandum and order dated February 24, 2011, the Bankruptcy Court found that Shay and Abbatiello willfully violated the automatic stay imposed under 11 U.S.C. § 362(a)(3). *In re Theokary*, 444 B.R. at 315. As to Gaitway and Showplace, however, the Bankruptcy Court concluded that they had not violated the automatic stay, and entered judgment in their favor. *Id.* at 326.

Following the liability finding, the Bankruptcy Court allowed the parties to engage in discovery on damages. As part of the damages discovery, Theokary's counsel delivered to opposing counsel a report from Theokary's purported expert witness that Theokary himself had delivered to his lawyers with the name of the expert, Samuel Paparo, redacted from both documents. The report was essentially identical to the "PLAINTIFF'S STATEMENT OF DAMAGES OR OTHER RELIEF" filed in the adversary action in September of 2009 as part of a Joint Pre-Trial Statement. (Supp.

3

App. 123-124.)[1]  Indeed, both the expert report submitted on behalf of Paparo in April of

2011 and the damages statement presented in September of 2009 estimated lost breeding

revenue of $1,350,000, based on the astounding representation that the two  horses who

were mares would birth seven foals per year over a five year period.[2]  Significantly, the

September 2009 Joint Pretrial Statement that included the estimation of Theokary's

damages did not list Paparo as a witness, but instead identified Antonius Kimbrough as

an expert witness for Theokary with "knowledge of the value of standardbred horses,

breading fees, purse monies and the like."  (Supp. App 145.)  Theokary's lawyers, acting

pursuant to Theokary's direction, sought a protective order to limit the disclosure of the

expert's identity and to preclude Appellees from communicating with him.  The

Bankruptcy Court denied this motion, directing production of unredacted copies of the

report and curriculum vitae.

Upon receipt of the unredacted report and curriculum vitae, counsel for Shay and

Abbatiello questioned their authenticity and obtained from the Bankruptcy Court an order

directing that the documents be produced in their native electronic file format, i.e., the

format in which they were created.  Production in native file format was sought so that

the metadata concerning the origin of the documents could be examined.

---

[1] Theokary and Appellees filed separate appendices.  References to Theokary's appendix will be to "App. at   " while references to Appellees' appendix will be to "Supp. App. at.   ".

[2] The gestation period for a foal is eleven months, making the identical representations in the pre-trial statement and the expert's report physically impossible.

Theokary, however, did not produce the unredacted curriculum vitae and report in native file format. Instead, on the day of Paparo's deposition, an amended version of the report in portable document format was produced.

After taking Paparo's deposition, Shay and Abbattielo moved in limine to preclude Paparo from testifying. The motion also sought dismissal of the adversary action because Theokary could not prove damages without an expert. The Bankruptcy Court consolidated the hearing on the motion in limine with the damages trial, which commenced on June 13, 2011.

On the first day of the damages trial, the Bankruptcy Court permitted the defense expert to be called out of order to accommodate that expert's schedule. The defense expert testified that in his opinion the three horses had a combined value of $4,000 when they were sold at the stablemen's lien sale.

After a lengthy voir dire, the Bankruptcy Court ruled that Paparo was not qualified to opine on damages.[3] Theokary, however, was allowed to present evidence as to his counsel fees. On the final day of the damages trial, Theokary moved to discharge his counsel. The Bankruptcy Court granted the motion after first receiving the testimony of Theokary presented as on cross-examination by defense counsel.

On April 10, 2012, the Bankruptcy Court issued a thorough and well-reasoned Memorandum and Order that found that Theokary had manufactured the Paparo report "in an attempt to commit a fraud upon the court and that [Theokary's] conduct warrants

---

[3] Theokary does not contest this ruling in this appeal.

5

dismissal of [the] adversary proceeding based upon the exercise of this court's 'inherent power.'" (App. 84.) Theokary appealed both the Bankruptcy Court's order of February 24, 2011 dismissing the claims against Showplace and Gaitway, and its April 10, 2012 order dismissing the adversary action as a sanction. The District Court, in a memorandum and order dated October 29, 2013, affirmed the dismissal of the adversary action. The District Court did not separately address Theokary's appeal as to Showplace and Gaitway, concluding that the Bankruptcy Court's sanction was wholly dispositive. This appeal followed.

## II.

The District Court had appellate jurisdiction over the final order of the Bankruptcy Court under 28 U.S.C. § 158(a)(1). We have jurisdiction to hear this appeal under 28 U.S.C. §§ 158(d) and 1291. We exercise the same standard of review as did the District Court. *See Fellheimer, Eicher & Braverman, P.C. v. Charter Technologies, Inc.*, 57 F.3d 1215, 1223 (3d Cir. 1995). Under this standard of review, the Bankruptcy Court's factual findings are assessed for clear error, a narrow standard of review which requires that we "accept the ultimate factual determination of the fact-finder unless that determination either is completely devoid of minimum evidentiary support displaying some hue of credibility or bears no rational relationship to the supportive evidentiary data." *Id.* (quoting *Hoots v. Pennsylvania,* 703 F.2d 722, 725 (3d Cir. 1983). Our consideration of the Bankruptcy Court's legal determination is plenary. *Id.* "In our review of the imposition of sanctions, the primary question before us is whether the sanctioning court abused its discretion." *Id.*

6

## III.

Theokary does not assail the Bankruptcy Court's factual finding that he manufactured the Paparo report in an attempt "to commit a fraud upon the court by knowingly and in bad faith offering this evidence under false pretenses." (App. 96a.) Instead, he challenges the Bankruptcy Court's authority to dismiss the adversary action as a sanction after having found that Shay and Abbatiello violated the Bankruptcy Code's automatic stay provision.

It has long been established that a "court may safely rely on its inherent power" to levy sanctions when parties engage in "bad-faith conduct." *Chambers v. NASCO, Inc.*, 501 U.S. 32, 50 (1991). Moreover, it is beyond dispute that courts are endowed with the intrinsic authority to dismiss an action *sua sponte*. *Link v. Wabash R. Co.*, 370 U.S. 626, 629-30 (1962) (citing 3 William Blackstone, Commentaries (1768), 295–296)). This power derives from a court's inherent duty to administer, manage, and adjudicate disputes, as well as the court's obligation to regulate the conduct of the attorneys and parties who appear before it. *Chambers*, 501 U.S. at 32. This authority "include[s] the ability to do whatever is reasonably necessary to deter abuse of the judicial process." *Eash v. Riggins Trucking Inc.*, 757 F.2d 557, 567 (3d Cir. 1985) (en banc) (citing *Nat'l Hockey League v. Metro. Hockey Club, Inc.*, 427 U.S. 639, 643, (1976) (per curiam)). A court, therefore, is empowered to vacate its own judgment upon a showing that a party has committed fraud, *Chambers*, 501 U.S. at 44 (citations omitted), or to dismiss an ongoing action as a sanction for a party's "flagrant bad faith" conduct, *Nat'l Hockey League*, 427 U.S. at 643.

Theokary argues that, irrespective of his wrongful conduct, the Bankruptcy Court

was required to award damages pursuant to 11 U.S.C. § 362(k)(1) based on the

undisputed evidence of his losses, such as his attorney's fees, that were unrelated to the

false expert reports. In a similar vein, Theokary also maintains that the District Court

erred when it did not consider his appeal from the Bankruptcy Court's determination that

Gaitway and Showplace did not willfully violate the automatic stay. He argues that

because this judgment predated the submission of the false expert report, it was wholly

unconnected to his fraud and untainted by that evidence.

To use an analogy, Theokary essentially asserts that the Bankruptcy Court should

have been more akin to a skilled surgeon using a scalpel, extracting *only* those portions of

the evidence and proceedings actually touched by disease. This argument fails to

recognize that his fraudulent conduct did not simply impact the tainted evidence, the

damages trial, or the adversarial proceedings as a whole – it represented a direct and

brazen affront to the judicial process. As the Supreme Court aptly noted over seventy

years ago:

> [T]ampering with the administration of justice in the manner
> indisputably shown here involves far more than an injury to a
> single litigant. It is a wrong against the institutions set up to
> protect and safeguard the public, institutions in which fraud
> cannot complacently be tolerated consistently with the good
> order of society.

*Hazel-Atlas Glass Co. v. Hartford-Empire Co.*, 322 U.S. 238, 246 (1944). This norm still

holds true today. Dismissal was properly imposed in this case "not merely to penalize

those whose conduct may be deemed to warrant such a sanction, but to deter those who

8

might be tempted to such conduct in the absence of such a deterrent." *Nat'l Hockey League*, 427 U.S. at 643.

Further, we cannot endorse Theokary's proposition that the District Court should have considered his appeal with respect to Gaitway and Showplace. The Bankruptcy Court's sanction in this matter has larger implications – it was leveled for the dual purposes of punishing Theokary for his wrongdoing and preserving the dignity of the court. We conclude, therefore, that the Bankruptcy Court properly exercised its inherent authority by dismissing the adversary action, and the District Court appropriately affirmed the dismissal of the action against all parties as a sanction for egregious misbehavior.

Theokary persists that the Bankruptcy Court was obligated to impose damages because Congress has decreed that "an individual injured by any willful violation of a stay provided by this section *shall recover actual damages, including costs and attorneys' fees*, . . ." 11 U.S.C. § 362(k) (1) (emphasis added). He contends that because Congress included the mandatory language "shall," the Bankruptcy Court was required to award him damages that were undisputed and not directly tainted by the false expert report.

We have previously rejected the proposition that rules and statutes enacted by Congress necessarily limit the court's ability to impose sanctions under its inherent power. *Fellheimer,* 57 F.3d at 1224. In this regard, "'we do not lightly assume that Congress has intended to depart from established principles' such as the scope of a court's inherent power." *Chambers*, 501 U.S. at 47 (quoting *Weinberger v. Romero–*

9

*Barcelo,* 456 U.S. 305, 313 (1982)).  Statutory schemes "are not substitutes for the inherent power, for that power is both broader and narrower than other means of imposing sanctions." *Id.*

The plain language of § 362(k)(1) neither modifies nor limits the Bankruptcy Court's inherent powers. [4]  Rather, § 362(k)(1) is merely a damages provision. Theokary was required to prove his losses pursuant to § 362(k)(1) through competent evidence.  As part of his damages case, he manufactured an expert report.  The submission of fabricated evidence, regardless of the merits or validity of the underlying claim, always constitutes egregious misconduct.  *Hazel-Atlas*, 322 U.S. at 246.  We conclude that the Bankruptcy Court properly exercised its inherent powers to levy sanctions in a live controversy over which it had jurisdiction.  As aptly put by our sister circuit, "we find it surpassingly difficult to conceive of a more appropriate use of a court's inherent power than to protect the sanctity of the judicial process — to combat those who would dare to practice unmitigated fraud upon the court itself." *Aoude v. Mobil Oil Corp.*, 892 F.2d 1115, 1119 (1st Cir. 1989).

IV.

---

[4] Theokary cites a string of cases that ostensibly support his contention that a Bankruptcy Court is divested of its inherent power to dismiss an adversary proceeding after liability under § 362 is established.  However, these cases do not support his position and, in any event, are not binding upon us. *See In re Duby*, 451 B.R. 664, 670 (B.A.P. 1st Cir. 2011) (noting that a willful violation of § 362(k) mandates damages without discussing the Bankruptcy Court's inherent authority to dismiss an action); *In re Grine,* 439 B.R. 461, 468 (Bankr. N.D. Ohio 2010) (same); *In re Crawford*, 388 B.R. 506, 518 (Bankr. S.D.N.Y. 2008), *aff'd in part, vacated in part, remanded*, 476 B.R. 83 (S.D.N.Y. 2012) (same).

The Bankruptcy Court determined that dismissal was warranted only after considering the factors we enumerated in *Poulis v. State Farm Fire and Casualty Co.,* 747 F.2d 863, 868 (3d Cir. 1984).[5] On appeal, Theokary argues that because the amount of damages sought by way of the manufactured expert report was not greater than the amount claimed in the September 2009 Joint Pre-Trial Statement, the sanction of dismissal was not warranted. He also contends that because the District Court found that one *Poulis* factor – the meritoriousness of his claim – weighed against dismissal, the sanction of dismissal should be set aside. No single *Poulis* factor, however, is dispositive. S*ee Briscoe v. Klaus,* 538 F.3d 252, 263 (3d Cir. 2008). And the fact that the report that Theokary manufactured simply tracked the plainly inflated damages set forth in a pretrial statement does not lessen the fraud he attempted to perpetrate. Under these circumstances, we cannot find an abuse of discretion in the Bankruptcy Court's consideration of the *Poulis* factors.

V.

For the reasons discussed above, we will affirm the District Court's order dated October 29, 2013, denying Theokary's appeal from the Bankruptcy Court.

---

[5] Those factors are:

> (1) the extent of the party's personal responsibility; (2) the prejudice to the adversary caused by the failure to meet scheduling orders and respond to discovery; (3) a history of dilatoriness; (4) whether the conduct of the party or the attorney was willful or in bad faith; (5) the effectiveness of sanctions other than dismissal, which entails an analysis of alternative sanctions; and (6) the meritoriousness of the claim or defense.

*Emerson v. Thiel College*, 296 F.3d 184, 190 (3d Cir. 2002).

11